(17 Misc. Rep. 592)

GRECO v. BERNHEIMER.

(Supreme Court, Appellate Term, First Department. July 27, 1896.)

NEGLIGENCE—ALLOWING WATER TO FLOW IN BUILDING.

The fact that an overflow of water occurs on the floor occupied by defendant is sufficient to charge with liability or injury to tenants on floors below, in the absence of any explanation negativing want of care on his part.

Appeal from Second district court.

Action by Angelo Greco against Leopold Bernheimer. There was a judgment in favor of plaintiff, and defendant appeals. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Rose & Putzel, for appellant.

J. J. Green, for respondent.

McADAM, J. The action is to recover damages to the goods of the plaintiff in his grocery store at No. 178 Mulberry street, extending through to No. 385 Broome street, this city, by an overflow of water which is alleged to have come from the third loft of No. 385 Broome street, occupied by the defendant for manufacturing and business purposes. It appears that on January 6, 1896, at about midnight, the plaintiff was awakened by the sound of running water; that he arose from his bed, and saw water running through the ceiling of his store; that he immediately summoned two policemen; and that the officers were engaged from about 12 to 4 o'clock in the morning in trying to stop the flow of water, and they finally succeeded by jamming the supply pipe on the floor immediately above the plaintiff's store. Upon the trial it was conceded that the plumbing in the defendant's establishment was in good order. So that the damage resulting to the plaintiff could have come only from neglect in leaving the water turned on. The defendant testified that there was a tank on the roof, into which water was pumped which supplied his loft; that his method of procuring water was by pressing a spring faucet, which was in perfect order; and that he had no water for some days preceding the overflow. The plumber called by the defendant testified to more: He proved there was an extra pipe,—a supply pipe,—which ran from the cellar into the defendant's loft, so that when the defendant could not get water from the tank he got it from this supply pipe, about which the defendant was significantly silent while upon the witness stand. It was established at the trial, beyond doubt, that the water came from the third loft, occupied exclusively by the defendant; that the loft above was perfectly dry, without the slightest sign of an overflow, while the floor of the defendant's loft, particularly around the sink, was quite wet, and bore every evidence that the source of the trouble was there. From the defendant's loft the water left traces leading to the floors below, and thence directly into the plaintiff's store, where the damage was done.

As the defendant was in the exclusive possession of the third loft, from which the water came, the overflow was sufficient, prima facie, to fix liability against him, in the absence of some explanation negativing want of care upon his part. Moore v. Goedel, 34 N. Y., at page 532. Of course, there must be some reasonable evidence of negligence; "but where," as the court said in Mullen v. St. John, 57 N. Y., at page 571, "the thing is shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who

have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." See, also, Lyons v. Rosenthal, 11 Hun, 46; Breen v. Railroad Co., 109 N. Y., at page 300, 16 N. E. 60; Volkmar v. Railroad Co., 134 N. Y. 418, 31 N. E. 870; Hogan v. Railroad Co., 149 N. Y. 23, 43 N. E. 403. There is evidence that about the time of the overflow the weather was exceedingly cold, and that two workmen, with their coats off, apparently employés of the defendant, said the day before the occurrence, while near the water faucet on his floor, that they intended to let the water run, so that it would not freeze in the pipes; and all the circumstances connected with the overflow confirm this theory, and point to the fact that the water was left running for the purpose mentioned. The defendant denied that these persons were in his employ, but, as he was interested in the result, the justice was not bound to believe his testimony. The defendant offered no explanation of the overflow. On the contrary, he strenuously insisted that it did not come from his loft, and that there was no water on his floor indicating an overflow from the faucet or waterworks under his charge. He testified that, while his floor was perfectly dry, he saw indications that the water came from the floor above. This was so much at variance with the controlling proofs and circumstances that the justice evidently discredited his testimony, and gave credence to the more probable theory that the defendant's workmen had allowed the water to run to prevent freezing. If the water had come from the floor above the defendant's as he asserted, it would have left its impress on the floors of his loft, as it did on the lofts below his, and yet he testified his loft was perfectly dry. The water did not come from the tank on the roof, or from anything above the defendant's loft, but from the extra supply pipe running from the cellar into the defendant's rooms, for when this pipe was jammed by the policeman the flood ceased. While the defendant testified considerably about this tank on the roof, and his means of getting water from it, the real cause of the trouble was the extra supply pipe from the cellar, about which he gave no information whatever. To hold that the water did not come from the defendant's loft would, in effect, be to find that there had been no overflow at all; for it is impossible to read the return of the justice, and attribute the overflow to any source other than the defendant's faucet, which was left open the afternoon of the day when the damage was done. The power of the running water was probably not felt at the time, but the closing of factories for the day, and the cessation of use by others, caused the water at midnight to rise and do the damage complained of. In Simonton v. Loring, 68 Me. 164, the servant of the occupants of an upper tenement accidentally left open a faucet, thereby causing the water to overflow and flood the tenement below, and it was held that the occupants of the upper tenement were liable for the damage done. In Killion v. Power, 51 Pa. St. 429, it appeared that the upper story of a building had water introduced into it with a vent by a spigot which was entirely under the control of the occupant of that story;

that one Hughes, a customer of the defendant, came to the latter's premises to get some barrels, got some whisky in a tumbler out of one of the barrels, and went overhead, and was there heard at the stopcock by one of the defendant's employés, and was told that there was no water there, the water at that moment being turned off in the street, while making repairs. Hughes evidently turned the cock, and, finding no water, left it so. The court said:

"There was ample evidence here that Hughes was not a mere trespasser. If Hughes came there by permission, and was permitted to use the water, certainly it was negligence, under the facts of this case, not to see to the condition of the cock before the store was closed for the day. The stopcock was in the third story, occupied exclusively by the defendant, and where the plaintiff had no right to go. When the defendant or his servants left the store, filled as it was with valuable goods, of course it must be locked up. A duty lay upon him to take care that so dangerous a thing as this stopcock was under the circumstances should not be left open, to flood the store of his neighbor below stairs. The maxim, 'Sic utere tuo ut alienum non lædas,' has here its most apposite application. It would be such negligence as entitled the plaintiff to recover."

A verdict in that case in favor of the plaintiff was affirmed.

Applying settled principles to the present contention, we think it was the duty of the defendant, when he closed his place of business for the night, to use some means to see that the faucet of the extra supply pipe, as well as the one on the pipe coming from the tank on the roof, was not left open to flood the floors of the occupants below. If the defendant had admitted the overflow, he might, perhaps, have excused himself by showing that, while he and his servants exercised every reasonable care in regard to the water pipes and faucets, the persons who turned on the water must have been trespassers upon his premises, who, in his absence, and without neglect upon his part, did the mischief complained of. Spencer v. McManus, 82 Hun, 318, 31 N. Y. Supp. 185. But that was not his line of defense. He persisted throughout that the overflow did not come from his loft; hence it could not have been caused by any one for whose presence on his premises he was bound to account, or for whose acts he should answer. The evidence sufficiently warranted the justice in finding for the plaintiff, and in assessing the damages for injury to the plaintiff's property at $177.25, the sum awarded.

The judgment must be affirmed, with costs. All concur.