J. HAZELTON COOK, JR., *vs.* LUZON B. MORRIS, EXECUTOR.

Third Judicial District, Bridgeport, April Term, 1895. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

During a trial to the jury it is error for the court to grant a nonsuit on the
ground that the allegations of the complaint, if proved, would not sup-
port a judgment. The legal sufficiency of the facts alleged must be
otherwise tested; either by demurrer, before answer, or by a motion
in arrest of judgment after verdict. This rule, well established by our
decisions, has not been changed by the Practice Act.

Where the determination of the motion for a nonsuit requires the court to
pass upon the credibility of witnesses, the motion should be denied;
however incredible the plaintiff's case may seem to the court. A
motion of nonsuit does not operate as a motion to set aside a verdict
as against the evidence.

[Argued April 18th—decided May 28th, 1895.]

ACTION to recover $25,000 alleged to be due and payable
to the plaintiff from the estate of the defendant's testator,
for services rendered the testator in his lifetime ; brought to
the Superior Court in New Haven County and tried to the
jury before *Ralph Wheeler, J.;* judgment as in case of non-
suit was rendered by the court, and the plaintiff appealed.
*Error.*

The case is sufficiently stated in the opinion.

*Rufus S. Pickett* and *Daniel Davenport*, for the appellant,
(plaintiff).

I. A motion for compulsory nonsuit being substantially
the same as a demurrer to the evidence, it is the duty of the
court to assume the truth of the plaintiff's evidence, and to
deduce therefrom every reasonable inference of fact in his
favor. To do otherwise is to impair the right of trial by
jury. *Jones* v. *Bland,* 116 Pa. St., 193. If there is substan-
tial evidence produced by the plaintiff in support of his
cause, which should be weighed and considered by the jury,
it is error to grant a nonsuit. *Booth* v. *Hart,* 43 Conn.,
484. This is true, although witnesses offered by the plain-
tiff contradict each other ; for it is the province of the jury
to say what credit is to be given to each and every witness.

The court in passing on the sufficiency of the plaintiff's case cannot look at facts proved by the defendant as matters of defense, though the same were elicited upon the cross-examination of the plaintiff's witnesses. A defendant who has carried his examination of the plaintiff's witnesses beyond the limits of a strict cross-examination, and brought out affirmative evidence properly part of his own case, cannot move for a nonsuit upon such evidence. The plaintiff has a right to offer evidence in rebuttal. This rule necessarily results from the nature and limits of the right to nonsuit. *Chappel* v. *Bates*, 56 Conn., 572.

The events as narrated in the complaint, if they occurred as there stated, clearly entitled the plaintiff to recover of the defendant the sum claimed. The defendant had a right to use two counts in narrating the events which constituted his transaction with the defendant's testator. *Bassett v. Shares*, 63 Conn., 41; *Craft Refrigerating Co. v. Qunnipiac Co.*, 63 id., 560.

II. A contract founded on sufficient consideration, to make a certain provision by will, for a particular person, is valid. *Wellington* v. *Apthorp*, 145 Mass., 72; *Jenkins* v. *Stetson*, 9 Allen, 128, 132; *Parker* v. *Coburn*, 10 id., 82; *Canada* v. *Canada*, 6 Cush., 15; *Parsell* v. *Stryker*, 41 N. Y., 480; *Thompson* v. *Stevens*, 71 Pa. St., 161; *Updike* v. *Ten Broeck*, 3 Vroom, 105; *Coviness* v. *Rushton*, 101 Ind., 500. A contract to leave a certain amount of money by will, to a particular person, though oral, is not open to objection under the statute of frauds. It is not a contract for the sale of lands or of goods; it may be performed within a year. *Peters* v. *Westborough,* 19 Pick., 364; *Fenton* v. *Embers*, 3 Burr., 1278; *Ridly* v. *Ridly*, 34 Beav., 478; *Kent* v. *Kent*, 62 N. Y., 560; *Bell* v. *Hewitt*, 24 Ind., 280; *Wallace* v. *Long*, 105 id., 522. Such a contract differs essentially from a contract to devise all one's property, real and personal, which comes within the statute of frauds. *Gould* v. *Mansfield*, 103 Mass., 408. The obligation of such a contract is not impaired, though the consideration is to arise wholly or in part in the future; and though the person to whom the promise

is made is under no mutual binding obligation on his part. *Train* v. *Gold*, 5 Pick., 380, 385; *Gardner* v. *Weber*, 17 id., 407, 413; *Bornstern* v. *Lans*, 104 Mass., 214, 216; *Goward* v. *Waters*, 98 id., 596; *Cottage Street Church* v. *Kendall*, 121 id., 528, 530; *Paige* v. *Parker*, 8 Gray, 211 -213; *Hubbard* v. *Coolidge*, 1 Met., 84; *Todd* v. *Weber*, 95 N. Y., 181-192; *Miller* v. *McKenzie*, ibid., 575-579.

III. The court granted the nonsuit upon the ground that there was no evidence in the case from which the jury could find that the plaintiff had agreed to forbear until Hand's decease, and therefore the plaintiff had not proved a consideration for the agreement of Hand to pay by will.

In the first place it was not necessary that the plaintiff, in order to recover, should prove that he had agreed to forbear as the consideration for Hand's promise to pay by will. It was sufficient for him to prove that Hand requested him to forbear, and that he did so forbear. In the second place there was abundant evidence before the jury from which they could find that the plaintiff at the request of Hand, did agree to forbear, and did forbear till Hand's death, as a consideration for Hand's promise to pay by will. In the third place there was abundant evidence before the jury from which they might find that in 1876, Hand owed the plaintiff the sum of $25,000, and that by falsely representing to the plaintiff that he had made provision for the payment of the amount so due by will at his decease, he induced the plaintiff to accept that sum to be paid in that way, and wait till his death before claiming the amount due him. Upon those facts the plaintiff upon familiar principles, would be entitled to recover from the defendant the sum of $25,000 with interest from Hand's decease. *Blair* v. *Wait*, 69 N. Y., 116; *Brown* v. *Wheeler*, 17 Conn., 353; *Kinney* v. *Farnsworth*, 17 id., 361; *Continental Bank* v. *National Bank*, 50 N. Y., 575.

Proof that Hand requested the plaintiff to forbear and that he did so forbear, is sufficient. Addison on Cont., §§ 14, 17; *Todd* v. *Webber et al.*, 95 N. Y., 191; *Lonsdale* v. *Brown*, 4 Wash. C. C. Rep., 149.

In all the cases above referred to, where a new promise in

consideration of forbearance was the ground of the action, the declaration stated the promise, the consideration and the forbearance, without any averment that the plaintiff on his part had agreed to forbear. See also 2 Chitty on Pleading, 82–84.

There was abundant evidence, however, from which the jury might find such an agreement upon the part of the plaintiff. " Juries have a right to infer what a man intends to do and what he actually has done from his conduct, beyond the positive testimony in a case." *Union Bank* v. *Middlebrook*, 33 Conn., 100 ; *Brooks* v. *Wright*, 13 Allen, 72. The following cases are directly in point: *Breed* v. *Hillhouse*, 7 Conn., 523 ; *Walker* v. *Sherman*, 11 Met., 172 ; *Boyd* v. *Frieze*, 5 Gray, 555 ; *Manters* v. *Churchill*, 127 Mass., 33 ; *Bank* v. *Cecil*, 23 Oregon, 52.

By accepting the statement and representation of the deceased, plaintiff deprived himself of the interest on the money for fifteen years, and of all the other benefits which could be derived from its possession. He also, by waiting till Hand's death, lost his legal remedy upon the original indebtedness by the operation of the law of limitation, notwithstanding the acknowledgment of the indebtedness made by Hand a few months before his death. There was evidence from which the jury might find that the statement and representations of the deceased were false. Even if the evidence did not establish a valid contract to pay by will, yet upon the above facts, which are sufficiently alleged in the first count of the complaint (63 Conn., 560, and 60 Conn., 51), the plaintiff would be entitled to recover, whether the representations were true or false at the time they were made. If false, on the ground of actual fraud ; if true, on the ground of what for want of a better name, is called a constructive fraud. *Grant* v. *Grant*, 63 Conn., 544, 545.

*John W. Alling* and *James H. Webb*, for the appellee (defendant).

I. The nonsuit was granted because the evidence showed no cause of action that could be enforced by a court ; be-

cause whatever cause of action, if any, was testified to, was without any legal consideration to support it.

Assuming Cook's testimony to be true, it appears that the sum of $25,000 was due him on June 29th, 1876, when Walker graduated from the law school. The right to recover upon this cause of action was clearly barred by the statute of limitations when this suit was commenced. And the complaint proceeds entirely upon the theory that Daniel Hand subsequently made a valid and enforceable promise to pay $25,000 by will, and having failed to do so his estate is liable on such promise. Stripped of verbiage the promise, the breach of which constitutes the alleged cause of action, is the promise by Hand, *in consideration of his indebtedness to Cook,* to pay that indebtedness by will. It will thus be seen that the promise remains merely a promise, the only consideration of which is the existing indebtedness.

Now, it is well settled that such new promise, based as its consideration, upon the existing indebtedness, does not affect the status of the debt, and that such new promise itself constitutes no cause of action. *Lord* v. *Shaler,* 3 Conn., 131, 134; *Hopkins* v. *Logan,* 5 M. & W., 241; *Belknap* v. *Gleason,* 11 Conn., 164; *Norton* v. *Shepard,* 48 id., 141, 142; *Mecorney* v. *Stanley,* 8 Cush., 88; *Kelly* v. *Olmsted,* 25 N. Y., 189; *Parmelee* v. *Thompson,* 45 id., 58; *Russell* v. *Buck,* 11 Vt., 166; *Rix* v. *Throop,* 9 id., 233; *Cook* v. *Bradley,* 7 Conn., 57; *North* v. *Forest,* 15 id., 400; *Shepard* v. *Rhodes,* 7 R. I., 470; *Wennall* v. *Adney,* 3 Bos. & P., 247; 3 Amer. & Eng. Ency. of Law, 830–840; *Jennings* v. *Chase,* 10 Allen, 526; *Tenney* v. *Prince,* 7 Pick., 243; *Smith* v. *Bartholomew,* 1 Met., 276; *Bailey* v. *Bussing,* 29 Conn., 6; *Roscorla* v. *Thomas,* 3 A. & E. N. S., 234; *Granger* v. *Collins,* 6 M. & W., 458; *Jackson* v. *Coblin,* 8 id., 790; *Lattimore* v. *Garrard,* 1 Exch., 808; *Kaye* v. *Dutton,* 7 M. & G., 809; *Miller* v. *Holbrook,* 1 Wend., 317; *Reynolds* v. *Ward,* 5 id., 501; *Pabodie* v. *King,* 12 Johns. 426; *Gibson* v. *Renne,* 19 Wend., 389; *Cobb* v. *Cordary,* 40 Vt., 25; *Runnamaker* v. *Cowdray,* 54 Ill., 303; *Reynolds* v. *Nugent,* 25 Ind., 328; *Smith* v. *Bartholomew,* 1 Met., 276; *Esterly Harvesting Machine Co.* v. *Pringle,* 59 N. W. (Neb.),

804; *McComb* v. *Fonellert*, 57 N. Y. S. R., 501 (27 N. Y. Supp., 372); *Arlington First Nat. Bank* v. *Cecil*, 32 Pac. Rep. (Oregon), 393; *Widiman* v. *Brown*, 83 Mich., 241; *Wadhams* v. *Page*, 1 Wash., 420; *Smith* v. *Bibber*, 82 Me., 34; *Stiles* v. *McClellan*, 6 Col., 89; *Dorr* v. *Chambers*, 14 Phila., 647; *Merrick* v. *Giddings*, 1 Mackey, 394; *Manter* v. *Churchill*, 127 Mass., 31; *Averill* v. *Sawyer*, 62 Conn., 560; *Vanderbilt* v. *Schreyer*, 91 N. Y., 392; *Warren* v. *Hodge*, 121 Mass., 106; 1 Swift's Digest, \*203.

If Cook was not bound to wait until Daniel Hand died, if his supposed promise to wait was not binding, then, of course, there was no consideration for Hand's promise. One part of a mutual arrangement cannot be good and the other part bad. In all cases of contracts, the parties must be considered as having entered into them with full knowledge of the law upon the subject. The law enters into the contract and forms part of it, as much as if there had been an express stipulation to that effect. *Comes* v. *Lamson*, 16 Conn., 246–251.

II. The doctrine of equitable estoppel has no application to the case.

III. We confidently submit that the statute of frauds ought to be so interpreted as that an oral promise, to be performed only at the death of the promisor, is void, as not to be performed within the expectation, and understanding, and supposition of the parties, within one year from its date; and we can see no reason why, in this State, the statute of frauds in this particular should not be construed as it ought to be. Browne on Statute of Frauds, §§ 279, 284.

It is nonsense to insist that the parties agreed or understood that the supposed promise was to be performed in one year. They understood that it was *not* to be performed in one year. It would take a *few years* at least.

Moreover, the evidence of Cook is clear, that it was understood that the promise would not be performed in one year.

HAMERSLEY, J. This is an appeal from the judgment of the Superior Court as in case of nonsuit, rendered during a

trial to the jury, upon the motion of the defendant and against the will of the plaintiff, after the plaintiff had adduced his evidence and rested his case. As the record does not disclose the particular reason which induced the court below to grant the motion, we will consider such grounds of nonsuit as apparently might have been the basis of the court's action. *First.* The claim made by the defendant, that there is no evidence to go to the jury in support of the facts put in issue by the complaint and answer, in connection with the claim that such facts, if proved, are legally insufficient to support any cause of action.

The complaint alleges in the first count, that one Daniel Hand died December 17th, 1891, leaving a will by which the defendant was appointed his executor; that the will was duly proved February 8th, 1892, and the defendant thereupon duly qualified as such executor, but that said will contained no provision for the payment of the sum of $25,000, or any part thereof, to the plaintiff; that said Hand did not in his lifetime pay said sum, nor any part thereof, to the plaintiff; that the plaintiff duly presented to said executor his claim against the estate for the payment of said sum of $25,000, and that the executor notified the plaintiff that he disallowed the claim and refused to pay it. These allegations were admitted by the answer.

The other allegations are in substance as follows: (1) In January, 1876, said Daniel Hand agreed with the plaintiff that if he "would tutor and make arrangements so as to graduate" one Hollis T. Walker from the Yale Law School, he, the said Hand, in consideration of said services resulting in the graduation of said Walker in the summer of 1876, "would give said plaintiff the sum of $25,000." (2) The plaintiff entered into said agreement and did tutor and make arrangements for graduating said Walker. (3) About July 1st, 1876, said Walker graduated from said Law School. (4) "Soon thereafter said plaintiff called upon said Daniel Hand for a settlement for services rendered as per said contract, and said Daniel Hand told said plaintiff that he had placed in his will the amount of $25,000, payable to said

plaintiff upon his (Daniel Hand's) death." (5) The plaintiff believing said statement to be true, and in consequence of the fact that said Hand was then about seventy-five years old, "thereupon agreed with said Daniel Hand to accept as a settlement the terms as above stated."

The second count contains the same allegations stated more in detail, and further alleges a promise by the plaintiff to forbear prosecuting his claim during Hand's lifetime, and actual forbearance, as induced by the promise of Hand to pay by will. The answer directly traversed each of these allegations; and these allegations and denials constituted the issues put to the jury for trial.

The burden resting on the plaintiff to make out a *prima facie* case, within the meaning of our statute authorizing a nonsuit, was satisfied, if his testimony, assuming it to be true and drawing from it every favorable inference of fact that might reasonably be drawn, contained any substantial evidence supporting the affirmative of the issues so put to the jury for trial.

We have carefully examined the testimony reported in the record, and are satisfied that there was evidence (if the testimony could be treated as true) to go to the jury in support of the facts so put in issue. Indeed we do not see how there can be any serious doubt of this, when the testimony is considered independently of its apparent untruthfulness, and of the questions of pleading suggested by the loose construction of the complaint. The defendant, however, relies in support of the nonsuit upon the claim that the facts alleged, if proved, are legally insufficient to support a judgment; and the attempt to demonstrate this claim pervades his whole argument. His claim is that "the nonsuit was granted because the evidence showed no cause of action that could be enforced by a court; because whatever cause of action, if any, was testified to, was without any legal consideration to support it"; and he further maintains that the want of consideration appears in the complaint, and that the insufficiency of the complaint is ground for nonsuit.

During a trial to the jury the legal sufficiency of the ma-

terial facts put in issue by the allegations of the complaint
and denials of the answer, cannot be questioned; and by
" material facts " in this connection, is meant facts constitut-
ing a part of the plaintiff's case as he presents it; the legal
sufficiency of such facts must be settled by demurrer before
the issues are joined and put to the jury, or else, after the
verdict is returned, by a motion in arrest of judgment or by
a writ of error. Such rule has been considered necessary to
the orderly conduct of an action, and is firmly established
by former decisions of this court. *Canterbury* v. *Bennett*,
22 Conn., 623; *Adams* v. *Way*, 32 id., 167.

This rule has not been changed by the Practice Act. The
elimination of all questions as to the legal sufficiency of the
facts alleged on which issues are actually joined, from the
trial to the jury of the issues so joined, if not more essential,
is certainly as essential to the orderly conduct of an action
under the new system of pleading as under the old. *Trow-
bridge* v. *True*, 52 Conn., 197; *Merwin* v. *Richardson*, ibid.,
233. In *Powers* v. *Mulvey*, 51 Conn., 433, it was held that
under the Practice Act, the denial of all the facts alleged in a
pleading, is an admission that such pleading is sufficient in
law, and the court says that a party cannot have " the benefit
of both a traverse and demurrer to the same facts at the same
time." *Todd* v. *Munson*, 53 Conn., 591, explains that it does
not follow from *Powers* v. *Mulvey*, that a plaintiff is necessa-
rily entitled to a judgment because he has proved the alle-
gations of a complaint manifestly insufficient in substance.
Undoubtedly in such case the legal sufficiency of the plead-
ings and findings of the jury to support a judgment, may be
raised after verdict by a motion in arrest. But *Todd* v.
*Munson* does not modify the well established rule that a party
cannot go to a trial upon the issues made by his denials of
allegations that may be demurrable, but are material as con-
stituting a part of the plaintiff's case as he presents it, and
upon that trial, claim the benefit both of a demurrer and trav-
erse to the same facts; such allegations are not " wholly im-
material to the right claimed by the pleadings," within the

meaning of § 10, article III. of the Rules of Court established under the Practice Act.

In this case the defendant did demur to the legal sufficiency of the complaint, stating his ground of demurrer as follows: " Because if each count is to be regarded as containing only one cause of action, growing out of the alleged breach of the promise of Daniel Hand to pay the plaintiff by will, or at his death, it appears that the contract of Daniel Hand, in such case, was not to be performed in one year from the time it was made ; and also, because no sufficient facts are alleged in either count to constitute such cause of action, or to entitle the plaintiff to the relief sought in his complaint." This demurrer was overruled. It appears from the memorandum of decision appended to the record and referred to in the order overruling the demurrer, that the insufficiency of the complaint as a ground of demurrer was not presented by the defendant in his discussion of the demurrer, and that this ground was not passed upon by the court, but was treated as abandoned. If, however, the demurrer to the insufficiency of the complaint must now be treated as overruled, and not simply as withdrawn by the defendant, we think it was properly overruled. As it was not confined to the prayer for relief, but included the whole of the complaint, it did not comply with the statutory provision that " all demurrers shall distinctly specify the reason why the pleading demurred to is insufficient."

But if the defendant had properly demurred to the complaint, distinctly specifying the reasons for its insufficiency argued before us, and the court below had overruled such demurrer, he would not in that case have been in position during the trial of issues raised by his denial of the material allegations of the complaint, to raise the question of the legal sufficiency of those allegations. The law gives him a different remedy. If the court erred in overruling the demurrer, he might stand on his demurrer and upon appeal from the final judgment obtain a reversal ; or, if he preferred first to take the chance of a verdict in his favor, he might, after verdict against him, obtain a reversal of the judgment

upon appeal. But when he answers over and denies the allegations, he goes to the trial of the issues thus raised with the questions of law settled, until the decision of the court is reversed in the proper manner; and he cannot during that trial raise the questions decided against him on demurrer, by a motion for nonsuit after the allegations in issue have been proved.

*Second.* The other ground on which the nonsuit might have been granted, is the impossibility that the facts testified to are true; in other words, that the testimony for the plaintiff contains in itself a demonstration of its untruthfulness so conclusive that the court may treat it as furnishing no evidence whatever. We are not prepared to say that a nonsuit can in no case be granted for such reason. If, for instance, in this case, the plaintiff had offered evidence that his conversations with Hand, which constitute the whole of his material evidence, had taken place while the plaintiff was in his class room at New Haven and Hand upon his lawn at Guilford, it might fairly be claimed that there was no evidence to go to the jury. In the supposed case the testimony is demonstrated by its conflict with well known physical laws to be untrue. The claim is made that in the case as it appears upon the record, the testimony is demonstrated to be untrue by its conflict with the recognized laws controlling human action.

The plaintiff's case involves a contract made by a thrifty and saving man who had accumulated by his own efforts a large fortune, by which contract he agrees to pay $25,000 for services extending over a few months, and which might readily be procured for a few hundred dollars. Hand had no motive to benefit the plaintiff, to whom he had spoken but once before the contract was made. The plaintiff also proves that Hand had no motive for making such expenditure on behalf of Walker, who was a brother of Hand's brother's wife. Walker lived until 1891, the year that Hand died. Hand's will was made in 1872, and modified by fourteen codicils, the last made in 1889. By this will and these codicils moderate provision is made for several nephews and

nieces, cousins, grandnephews and grandnieces, but no mention is made of Walker. The only motive suggested for such unaccountable extravagance, is that Hand wanted this law student for his private lawyer. The case not only involves the payment of $25,000 to the plaintiff, a classmate of Walker, but a negotiation with the Dean of the Yale Law School (contradicted by the Dean whom the plaintiff felt obliged to produce as a witness) for promoting the graduation of Walker in consideration of Hand giving Yale College $25,000, and probably making further gifts; as expressed by the plaintiff: "It was, so to speak, to soap the wheels, grease the wheels a little, not only the $25,000 but the money that was gradually to rain down on the college, a continual stream." The plaintiff, an undergraduate, opens this negotiation with the Dean, who says, "Send Mr. Daniel Hand to me." Mr. Hand responds to the request, and after the interview the Dean tells the plaintiff, " I have seen Mr. Hand; the arrangements are all right, and provided you tutor him so that he recites in the recitations all right, Walker will graduate in 1876." The $25,000 to Yale College, and the like sum to the plaintiff, were never paid by Hand, described as " an honest man of great integrity," who left the main portion of his large property to charitable uses.

The case further involves the plaintiff, immediately after he had earned his $25,000 by the graduation of Walker, accepting, in satisfaction of his existing right to the payment of $25,000, the statement of Hand (accompanied by a warm embrace and kiss in the presence of a croquet party on the lawn)· that he had made a codicil to his will giving him $25,000 ; and the absence of any communication between the plaintiff and Hand on this subject during the fifteen years that Hand survived, except a brief interview shortly before Hand's death; the plaintiff during most of the time being in straits for money and harassed by debts. The taking place of the foregoing transactions are necessarily involved in the plaintiff's case; there are other matters incidentally involved scarcely less extraordinary.

It would be folly to deny that this story so conflicts with

the experience of human life and the acknowledged motives which govern human action, as to make it highly improbable. It contains in itself a suggestion of incredibility. Yet it cannot be said to be impossible in the same way that a conversation between two persons, unaided by the telephone, who are fifteen miles apart, is impossible. We know that the laws which govern human actions are subject to occasional exceptions which seem little short of miraculous.

But the defendant claims that a story so highly improbable cannot be regarded as substantial evidence, unless supported by testimony of the highest character; and becomes practically impossible when supported, as in this case, by witnesses whose reliability is questioned. This is true; but then we must be asked to take the case from the jury because the credibility of the witnesses is not sufficient to justify belief in the story they tell,—and this credibility of the witnesses is the very matter which the law says must be submitted to the jury. If the court could say it is legally impossible for this story to be true, however credible the witnesses who testify to it may be, there might then be no substantial evidence to go to the jury; but we cannot say this, and a nonsuit cannot be granted because the court is satisfied that the witnesses are not credible. If this testimony had been submitted to the jury and a verdict rendered for the plaintiff, the court, satisfied that the credibility of the witnesses had been so shaken upon their examination and cross-examination as to demonstrate that in believing such a story on such testimony the jury must have acted under some mistake or prejudice, might not hesitate to set aside the verdict. But a motion for nonsuit cannot be permitted to operate as a motion to set aside a verdict against evidence. The latter is a proceeding by which the court may give relief for a palpable mistake made by the jury in weighing evidence submitted to them; the former is a proceeding by which the court may take a case from the jury when, admitting the truth of the evidence submitted by the plaintiff and every favorable inference that may be drawn from it, the issues must nevertheless be found against the plaintiff by force of some legal principle the determina-

tion of which is within the province of the court and not of
the jury ; or when the facts testified to are so clearly with-
out that logical relation to the facts in issue, legally essential
to any probative force, as in point of law to constitute no
substantial evidence of the fact in issue, and so a verdict may
be set aside which is rendered upon the same evidence upon
which the court has already refused to grant a nonsuit.
*Bennett* v. *Agricultural Insurance Co.*, 51 Conn., 512. A non-
suit for such cause has a very limited range, and should be
sparingly used. It is never a matter of right, and should
rarely if ever be granted where there can be any doubt, unless
the evidence of the plaintiff distinctly raises a question of law
determinative of the plaintiff's right of action. Where the
granting must depend in any appreciable degree upon the
court's passing upon the credibility of witnesses, the non-
suit should not be granted. And ordinarily, as a matter of
practice, where the nonsuit can settle no principle of law
essential to the plaintiff's right of action, the consideration
of ending the litigation by the verdict of a jury should con-
trol, and the trial should go on.

Strictly, a nonsuit is a mode of putting the plaintiff out
of court without trial, as the result of his own voluntary
action. By former practice when the evidence submitted by
the plaintiff was in law insufficient to maintain the issue
joined, the defendant might demur to the evidence, and on
this demurrer the court might render judgment. It is said
the practice of nonsuiting a plaintiff against his will upon
his failure to prove his case, is a substitute for a demurrer
to evidence ; this is not quite true. The main purpose of
demurrer to evidence was to raise questions of law that
could conveniently be raised in no other way, and it essen-
tially differed from a nonsuit, in that the judgment following
the demurrer ends the litigation, whereas a judgment as in
case of nonsuit is no bar to another action. When provi-
sion was made for reviewing questions of law by motions for
new trial and reservations, the demurrer to evidence grad-
ually passed out of our practice, and if such a demurrer has

been filed during the present century, no instance appears in our reports.

It is held in many cases of high authority that the court has no power to order a peremptory nonsuit against the will of the plaintiff; that the plaintiff has a right by law to a trial by jury and to have the case submitted to them (see language of CHIEF JUSTICE MARSHALL in *Elmore* v. *Grymes*, 1 Peters, 469). The involuntary nonsuit for insufficiency of evidence, was unknown to the common law practice of this State. It was not until 1852 that a statute was passed authorizing the court to grant a motion for nonsuit when it "should be of opinion that the plaintiff had failed to make out a *prima facie* case." General Statutes, § 1109. This statute was held not to impair the right of trial by jury. *Naugatuck R. R. Co.* v. *Waterbury Button Co.*, 24 Conn., 478. There have been but few cases brought before us under this statute, but we think they all point to a very limited field for its operation. The question is, in each case, as stated in *Thames Steamboat Co.* v. *Housatonic R. R. Co.*, 24 Conn., 49: "Is the plaintiffs' evidence sufficient, in point of law, to make out a *prima facie* case in their favor?" We are not disposed to extend the statute, even in such an extreme case as the present one, so as to permit a nonsuit in any case where the facts claimed as presenting the question of law may depend upon the credit to be given witnesses, or may depend upon inferences of fact to be drawn from the testimony, as to which inferences the parties may reasonably differ.

If the court below granted the nonsuit on the ground that the allegations of the complaint, if proved, would not support a judgment, it erred, because the insufficiency of the complaint cannot be taken advantage of in that way. If the court granted the nonsuit on the ground that the testimony and the inferences of fact from the testimony, giving full credit to all the witnesses and drawing the most favorable inferences of fact that can reasonably be inferred, furnished no evidence to go to the jury in support of the issues actually presented by the allegations of the complaint and de-

nials of the answer, we think the court misapprehended the effect of the testimony.   If the court granted the nonsuit on the ground that there was no evidence to go to the jury, because the testimony for the plaintiff disclosed the impossibility of the existence of the facts testified to, we think such conclusion is not fully justified by the extraordinary character of the story told, but involves passing upon the credibility of witnesses, and therefore the plaintiff was entitled to have the verdict of the jury, however barren such right might be.   A party has the same right to submit to a jury a weak case as he has to submit a strong one.   To distinguish between worthless and sufficient testimony is the very purpose for which juries are impaneled.   The presumption is they will decide correctly.   If they make a palpable mistake, the verdict can be set aside.

There is error in the judgment of the Superior Court.

In this opinion the other judges concurred, except ANDREWS, C. J., who dissented.