## FRANK W. FITCH vs. JEPHTHAH G. BILL, EXECUTOR.

Second Judicial District, Norwich, May Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, JS.

If a *prima facie* case is made out by a plaintiff he cannot be nonsuited under our statute (General Statutes, § 1109), although the trial court may be of the opinion that his evidence has also so clearly proven the special defenses set up by the defendant as to require no evidence from the latter.

In an action to recover the contract price of land, the plaintiff was nonsuited upon two grounds: first, that the action was barred by the statute of limitations, pleaded as a special defense by the defendant; and second, because of fraud or illegality in the contract. *Held* that these were matters of defense, and could not be considered upon a motion for a nonsuit. *Held* also, that the question as to when the plaintiff's right of action accrued, should have been submitted to the jury, inasmuch as there was substantial evidence in support of the plaintiff's contention upon that point.

Argued June 1st—decided July 26th, 1898.

ACTION to recover the contract price of certain real estate claimed to have been deeded to the defendant's testator, brought to the Superior Court in New London County where the plaintiff, in a trial to the jury before *George W. Wheeler, J.*, was nonsuited, and appealed from the refusal of the trial court to set aside such judgment. *Error and new trial granted.*

Paragraphs 1, 3 and 12 of the complaint were as follows: "1. On March 13th, 1880, the defendant's testator, the said Daniel S. Guile, then in full life, did purchase by deed all of the rights and titles that the said Ezra L. Guile had in or to the estate of his father, Henry Guile, for which he, the said

Daniel S. Guile, promised to pay the amount of $1,000, or deed the said property back to the said Ezra L. Guile during the lifetime of the said Daniel. . . 3. The said $1,000 has never been paid to Ezra L. Guile or any of his legal representatives. . . 12. The property so had and received by said Daniel S. Guile, deceased, has never been paid for, but the promised value thereof is now justly due the plaintiff, Frank W. Fitch."

These paragraphs were denied by defendant's answer. By a third defense the defendant pleaded the statute of limitations.

Evidence was offered by plaintiff showing that on the 13th of March, 1880, the said Ezra L. Guile by quitclaim deed conveyed to his brother, Daniel S. Guile, all his interest in his father's estate; that the consideration stated in the deed was "for divers good causes and considerations moving, especially for $1,000 received to my full satisfaction of Daniel S. Guile;" that said estate was distributed the following year; that at the time of said conveyance, the wife of Ezra was threatening to commence proceedings for a divorce and to attach said land to secure alimony; that said conveyance and the contract between said brothers with reference to the reconveyance of said property and the payment of $1,000, were made for the purpose of defeating said threatened attachment and preventing the wife of Ezra from obtaining alimony; that after said property was distributed in 1881, Ezra remained in possession of the land distributed to him; that the wife of Ezra after said conveyance was made commenced proceedings and obtained a divorce; that some time in 1896 a conversation occurred between Ezra and Daniel with reference to the reconveyance to Ezra of said property, and that Daniel promised to reconvey the same; that the said Daniel never either reconveyed said property to Ezra nor paid to him said $1,000; that said Daniel S. Guile died June 17th, 1896, and that the defendant was his executor; that within the time limited by the Court of Probate the said Ezra L. Guile presented his claim for $1,000 to the defendant executor, and the same was disallowed; and that the said Ezra afterwards assigned his said claim to the plaintiff.

Several of plaintiff's witnesses testified to statements made by Daniel either before or about the time of the conveyance, with reference to the payment by him of $1,000. The following is from the testimony of the said Ezra Guile: "Q. Did you and your brother Daniel ever make a contract relative to that property where you now live? A. Yes, sir. Q. When was it? I want you to state fully to this jury, in your own way, when it was. Tell them about it and how you came to make it. A. It was March 12th, I think; I could not swear positively; 1880. She, that was my wife, threatened to sue me and attached my interest. I spoke to him about it, and he says, 'I will give you a thousand dollars.' I says, 'I want to keep my property if I can.' 'Well,' he said, 'I will give you a thousand dollars and you give me a quitclaim deed of all your right, title and interest in the place, and I will hold it against her, and I will either give you a thousand dollars or I will give you your property back during my life.' And that was satisfactory to me."

Another of plaintiff's witnesses testified that Ezra said he would give him (Daniel) a quitclaim deed of the property in the undivided estate, and that Daniel said he would give him the property back again or his money, $1,000.

Another of plaintiff's witnesses testified that Daniel told him (Ezra) he could transfer it (the property) to him and he would either give him $1,000 or his place back. The same witness testified that Daniel said he would either leave him a thousand dollars in his will when he died, or give him his place back. "That was just what the statement was." This witness said, "It would be left that way, so that he would have a thousand dollars."

Witnesses of the plaintiff also testified to conversations between Ezra and Daniel with reference to a reconveyance of said property, and of statements of Daniel shortly before his death, about reconveying the property to Ezra.

At the close of plaintiff's testimony the defendant moved for a nonsuit, which the court granted, upon the grounds that the transaction between Ezra and Daniel was illegal, as it was for the purpose of preventing Ezra's wife from obtaining

alimony in said property and was in fraud of her rights; and that plaintiff's action was barred by the statute of limitations.

The plaintiff filed his motion to set aside said nonsuit, which motion was denied by the court. The granting and refusing to set aside the nonsuit are plaintiff's grounds of appeal.

*Solomon Lucas* and *Roderick M. Douglass*, for the appellant (plaintiff).

*Donald G. Perkins*, with whom was *Hadlai A. Hull*, for the appellee (defendant).

HALL, J. The two grounds stated in the finding upon which the Superior Court sustained the defendant's motion for a nonsuit, are: first, that the right of action upon the alleged promise did not accrue within six years next before the death of Daniel Guile, and that therefore the plaintiff's right to recover was defeated by the statute of limitations; and second, that the transaction between Ezra Guile and Daniel was illegal, since its purpose was to deprive the wife of Ezra of her right to alimony in the property conveyed.

To determine whether the statute of limitations is a bar to the action, it must first be ascertained from the plaintiff's evidence what the agreement was between the brothers Ezra and Daniel, and particularly what the understanding was as to the time when, and the conditions upon which, Daniel was to pay the $1,000. The transaction occurred in 1880. There was no written contract between them. None of the witnesses who heard the negotiations between the parties seem to have testified clearly when and under what circumstances Daniel was to pay the $1,000, nor do their statements agree as to what was said by the parties to the contract. Ezra Guile, when asked as a witness to state the transaction fully, says, with reference to the promise of his brother, that he said, " I will give you one thousand dollars; . . . I will give you one thousand dollars and you give me a quitclaim deed.

. . . I will either give you one thousand dollars or I will give
you your property back during my life." Another of plain-
tiff's witnesses testified that Daniel said that he would give
him back the property again or his money, $1,000. Another
witness said : " Daniel told him he could transfer it to him
and he would either give a thousand dollars or his place back."
The same witness also testified : " He said he would either
leave him a thousand dollars in his will when he died, or
give him his place back. That was just what the statement
was ; it would be left that way so that he would have a thou-
sand dollars."

It seems clear from the evidence that it was agreed that
either the property should be reconveyed to Ezra, or he should
receive $1,000. But, was it the understanding Ezra might
at any time request a reconveyance, and, upon Daniel's fail-
ure to comply with such request, demand the $1,000 ; or, was
the arrangement that Ezra should occupy the property and
pay the taxes (as he seems to have done) and become entitled
to receive $1,000 only upon the failure of Daniel to reconvey
the property during his (Daniel's) life ? If the plaintiff pre-
sented substantial evidence that the agreement between the
brothers was that the right to demand the $1,000 from Daniel
did not accrue until Daniel failed to reconvey, either upon
demand or during his life, the plaintiff should not have been
nonsuited ; since the jury upon such evidence might properly
have found that the right of action did not accrue more than
six years prior to Daniel's death.

This court will not, upon this appeal and upon the evidence
before us, express an opinion as to what the real contract was,
or whether, by its terms and upon the facts shown, the action
was barred by the statute. We think it clear, however, that
sufficient proof was offered by the plaintiff of a contract, by
the terms of which, upon the evidence, the plaintiff's right of
recovery was not defeated by the statute of limitations, to
entitle him to be heard to the jury upon those questions. It
should have been left to the jury to decide from the testimony
of the witnesses as to the language of the parties to the
transaction, from the evidence showing their subsequent con-

duct, the object to be attained by the conveyance, and all the surrounding facts in evidence, what the agreement was regarding the right of Ezra to receive the $1,000; and, under instructions from the court upon the law adapted to the facts as they might be found, the jury should have decided the issue raised by the defendant's answer of the statute of limitations and the plaintiff's reply to that answer.

Irrespective of the point that fraud and illegality, as well as the statute of limitations, were not pleaded (as to the merits of which we express no opinion), there is a decisive reason why the action of the court in granting the nonsuit cannot be sustained. The nonsuit was not granted upon the ground that the plaintiff had failed to established by *prima facie* proof the material allegations in the complaint. It clearly could not have been granted for that reason, upon the evidence reported. The record shows that the defendant's motion was sustained upon two points: that the transaction was illegal, and that the action was barred by the statute; that is, the motion was granted, not because the plaintiff had failed to prove his case *prima facie*, but because, having proved it, certain other facts alleged in special defenses, had also, in the opinion of the court, been so clearly established by the evidence before the jury when the plaintiff rested his case, as to require no evidence to be presented by the defendant in proof of them.

Section 1109 of the General Statutes permits the granting of a nonsuit " when on the trial of any issue in fact, in a civil action, the plaintiff shall have produced his evidence and rested his cause," if, in the opinion of the court, he has " failed to make out a *prima facie* case." When issues of fact are raised by the plaintiff's denial of the averments of a special answer, such issues are not on trial while the plaintiff is presenting his evidence in chief upon a general or special denial of the allegations of the complaint. The burden being upon the defendant, upon the issues raised by a denial of the special answer, the plaintiff neither presents evidence upon it while proving his case in chief, nor does he rest his cause upon those issues when he closes his case in chief.

It was said in *Cook* v. *Morris*, 66 Conn. 196, 203 : "During a trial to the jury the legal sufficiency of the material facts put in issue by the allegations of the complaint and the denials of the answer, cannot be questioned." To allow a defendant, under a denial of the allegations of the complaint, to question their legal sufficiency, would be to permit him at the same time to deny and admit the truth of such allegations. The claims of a defendant who, while denying the allegations of the complaint, admits their truth by seeking to avoid their effect by new matter, are equally contradictory and inconsistent.

In discussing the question of when the plaintiff, within the meaning of our statute, had made out a *prima facie* case upon an issue raised by a denial of the allegations of the complaint, this court said, in *Cook* v. *Morris, supra,* p. 203 : " The answer directly traversed each of these allegations ; and these allegations and denials constituted the issues put to the jury for trial. The burden resting on the plaintiff to make out a *prima facie* case, within the meaning of our statute authorizing a nonsuit, was satisfied, if his testimony, assuming it to be true and drawing from it every favorable inference of fact that might reasonably be drawn, contained any substantial evidence supporting the affirmative of the issues so put to the jury for trial."

The plaintiff in the case before us having, upon the trial of the issue raised by a denial of certain paragraphs of the complaint, proved the facts alleged in such paragraphs, should not have been nonsuited. The statute of limitations, and fraud and illegality, were matters of defense which should not have been considered upon the motion for a nonsuit. *Brown & Brothers* v. *Brown,* 56 Conn. 249–252 ; *Chappell* v. *Bates,* ibid. 568–572 ; *O'Brien* v. *Miller,* 60 id. 214–216.

In the case of *Wallingford* v. *Hall,* 64 Conn. 426, cited by the defendant, the claim was not made by counsel that a matter of defense should not have been made the ground for a nonsuit. On the contrary, it was conceded by counsel that by the appeal from the decision of the trial court in granting and refusing to set aside the nonsuit, substantially the same

question was raised as by the appeal from the decision overruling the demurrer.

There was error in refusing to set aside the nonsuit, and a new trial is granted.

In this opinion the other judges concurred.