NATHAN BAGGISH vs. SAMUEL OFFENGAND ET AL.

First Judicial District, Hartford, January Term, 1922.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

A motion for a nonsuit should be denied if the plaintiff's evidence, strengthened by every favorable inference of fact that may reasonably be drawn from it by the jury, contains any substantial evidence in support of the allegations of the complaint.

In the present case the defendant, an indorser of a note, upon its production at the trial, expressly admitted the facts alleged in the complaint and theretofore denied by him in his answer, including his signature on the back of the note. *Held* that in this situation his motion for a nonsuit should have been denied; that under the Negotiable Instruments Act the defendant, from the location of his signature on the instrument, preceding the plaintiff's signature made on a subsequent negotiation of the note, was to be deemed

Baggish *v.* Offengand.

an indorser, and therefore in the absence of any indication in his indorsement of his intention to be bound in any other capacity, he must be presumed to be liable as a prior indorser to the plaintiff, who was prima facie a subsequent holder in due course.

The trial court intimated that the plaintiff should produce further evidence to prove that the defendant's indorsement was placed on the note before the plaintiff gave the money for it to the maker. The plaintiff then introduced evidence that upon the solicitation and representations of the defendant indorser, he gave his check to the maker, taking back the latter's unindorsed note secured by a conditional bill of sale of certain automobiles; that about an hour thereafter the plaintiff discovered that the maker did not have in his possession the automobiles represented, whereupon the plaintiff threatened to stop payment of his check, and the defendant, to induce him not to do so, placed his name on the back of the note in the maker's presence and delivered it to the plaintiff. *Held* that even if the plaintiff could have been required to produce any evidence on this point additional to the note and the admitted facts, the judgment of nonsuit was nevertheless erroneous, since there was evidence from which it might legitimately be inferred that the first delivery was annulled with the consent of the maker, and that the defendant's indorsement was made before there was an effective delivery of the note.

In passing upon a motion for a nonsuit, the only evidence to be considered is that offered by the plaintiff in support of the allegations of his complaint. Evidence elicited on cross-examination of the plaintiff's witnesses, tending to support affirmative defenses pleaded by the defendant, has no proper place in such consideration.

The special defense of usury is not available to an indorser who is not a party to the alleged usurious agreement and who cannot be injured thereby. This defense is intended to protect an oppressed debtor, and he only has the option to take advantage of it.

Submitted on briefs January 3d—decided March 29th, 1922.

ACTION against the maker and the indorser of a promissory note for $5,300, brought to the Superior Court in Hartford County where the plaintiff was non-suited in a trial to the jury before *Webb, J.*, and from the refusal of the court to set aside such judgment, the plaintiff appealed. *Error, judgment set aside and cause remanded to be proceeded with as if no nonsuit had been granted.*

The complaint set up that the defendant Offengand,

on September 10th, 1919, by his note promised to pay $5,300 to the order of the plaintiff, for value received, six months after date, at a bank named; that the defendant Kaplan indorsed this note to the plaintiff; that when due the note was presented at the bank named, but was not paid; that notice thereof was duly given to both defendants; and that the plaintiff still owns the note and it has not been paid.

The defendant Offengand being bankrupt, his trustee was allowed to enter as a party defendant; but he made no defense.

The defendant Kaplan filed an answer in which he set up: (1) denial of all allegations of the complaint; (2) that on September 11th, 1919, he placed his name on the back of the note, without consideration, and for the sole accommodation of the plaintiff; (3) and (4) a usurious agreement between the defendant Offengand and the plaintiff; (5) fraudulent representations by the plaintiff, relying on which the defendant "loaned his name as aforesaid"; and (6) material alterations of the note after he had "loaned his name to the plaintiff."

In his reply the plaintiff denied these allegations of the answer.

*William F. Henney* and *Morris Older*, for the appellant (plaintiff).

*Edward L. Smith, Isidor E. Finkelstein* and *Thomas C. McKone*, for the appellee (defendant Kaplan).

BURPEE, J. To make out a prima facie case on the trial of the issues of fact framed by the pleadings in this action, it was necessary for the plaintiff at the outset merely to produce substantial evidence to prove the allegations of his complaint. The evidence so pro-

duced, which is made a part of the record before us, demonstrates that he satisfied this necessity. It includes the note in suit, bearing on its back in the order named the blank indorsement of the defendant Kaplan, of the plaintiff, of the Riverside Trust Company, dated February 24th, 1920, and of the Fidelity Trust Company, dated March 11th, 1920, followed by the words "Received Payment Through Clearing House. Prior Endorsements Guaranteed." On the face of the note was stamped the protest for nonpayment on March 10th, 1920.

In this shape the note was put before the court and jury without objection. Thereupon this defendant, notwithstanding the general denial pleaded in his answer, expressly admitted all the facts alleged in the complaint, including his signature on the back of the note. Since this signature stands without words to indicate his intention to be bound in some other capacity, the defendant must be deemed to be an indorser. General Statutes, § 4421. If he so placed his signature on this instrument that it was not clear in what capacity he intended to sign, he is to be deemed an indorser. General Statutes, § 4375. One of the liabilities thus assumed was an engagement to pay the amount of the note to a subsequent holder in due course if it were dishonored and the necessary proceedings in dishonor were taken. General Statutes, § 4424. On the pleadings and evidence the plaintiff might be deemed prima facie to be a subsequent holder in due course. General Statutes, §§ 4410, 4417; *Merchants Nat. Bank* v. *Smith*, 59 Mont. 280, 295, 196 Pac. 523; *Thorpe* v. *White*, 188 Mass. 333, 74 N. E. 502; Brannan's Neg. Inst. Law (3d Ed.) pp. 50–53; 8 Corpus Juris, 468, 470; Crawford's Neg. Inst. Law, p. 96. As such holder he could enforce payment against all parties liable on the instrument. General Statutes, § 4415. His signa-

ture as indorser appeared below that of the defendant. Indorsers are prima facie liable in the order in which they indorse. General Statutes, § 4426. Without evidence produced by the defendant to show a different agreement, he would be presumed to be liable as a prior indorser. Therefore, at this point in the trial, the plaintiff appeared not only to have made out a strong prima facie case, but to have produced sufficient evidence to prove the allegations of his complaint.

But the record shows that the defendant then made known his intention to attempt to escape the liability of an indorser by limiting the effect of his indorsement to the plaintiff, by refusing to admit that it had been made before delivery of the note. He put forth the claim that, notwithstanding his indorsement and the fact that his signature was written above that of the plaintiff, the burden was on the plaintiff to prove by extrinsic evidence that this indorsement was made before delivery; that is, that the plaintiff should be compelled to produce additional evidence to establish a fact already prima facie proved by legitimate inference from evidence produced. That claim does not rest on tenable ground.

The record discloses that in this situation, at the suggestion of the defendant's counsel, the trial court intimated that the plaintiff should produce further evidence for the purpose of proving definitely that the indorsement was placed on the note before he gave the money for it to the maker. Accordingly, the plaintiff introduced testimony tending to prove the following facts: The defendant Kaplan solicited and persuaded the plaintiff to lend $5,300 to Offengand, by means of representations concerning his financial standing, and of statements that Offengand owned and had in his garage a number of automobiles which he would convey to the plaintiff as security for the loan. The plaintiff,

relying on these assurances, gave his check for $5,300 to Offengand, payable to his order and dated September 10th, 1919, and received from Offengand his unindorsed note for that sum, and as security a conditional bill of sale of his automobiles mentioned by Kaplan. This was done about four o'clock in the afternoon of September 10th, 1919, and immediately afterward the plaintiff went to look for the automobiles and did not find all that were specified in the bill of sale. Then the plaintiff went forthwith to Offengand and declared that he did not like the transaction and would stop payment on the check he had given to him. Offengand immediately telephoned this information to Kaplan and then requested the plaintiff to go with him to Kaplan's house. They did, and the plaintiff stated to Kaplan that the transaction was not what he had represented, and that the automobiles which he had told him were in Offengand's garage were not there; and he declared that he was going to stop payment of his check. Thereupon Kaplan offered to indorse Offengand's note if the plaintiff would not stop payment of his check. The plaintiff accepted this proposition and handed the note to Kaplan, who then placed his signature upon it. At the same time, as security for his indorsement, Kaplan demanded that the plaintiff give to him the rights conveyed by the bill of sale from Offengand to the plaintiff, and the plaintiff and Kaplan then executed a written agreement that Kaplan would indorse the note "to be made " by Offengand, and if Kaplan should be compelled to pay the note, he should "be subrogated to the position " of the plaintiff secured by the bill of sale made by Offengand. A copy of this agreement was taken by each party and the note delivered to the plaintiff. These transactions were finished between five and six o'clock in the afternoon of September 10th, 1919. On

the next day, Offengand cashed the plaintiff's check and received the sum of $5,300.

Assuming, but by no means conceding, that the plaintiff was required by law to produce any testimony, in addition to the note itself and the admitted facts, to prove that the defendant's indorsement was made before delivery of the note, it by no means follows that the opinion of the court should determine whether the plaintiff had failed, with all the evidence thus produced, to make out a prima facie case upon this point in dispute. Here was evidence from which different inferences of fact might reasonably be drawn. On the one hand, the plaintiff contended the legitimate inference from all the evidence was that before he had paid the consideration for the note, he annulled the first delivery with the consent of the maker, and then at the maker's request resumed negotiations which resulted in the indorsement by the defendant for the maker's benefit and ended in the actual delivery of the note thereafter; and that therefore the defendant was an indorser before the effectual delivery. On the other hand, the defendant claimed that the additional testimony proved that the delivery was complete when the plaintiff gave his check and first took the note, and that therefore by his subsequent indorsement the defendant did not become an indorser before delivery. Evidently, it was assumed that the liability of the defendant Kaplan depended as a matter of law upon an indorsement made by him before the delivery of the note. But even if such an assumption could be rested on any basis of law, nevertheless the time of the indorsement relative to the time of the delivery, must be fixed by a conclusion of fact drawn from subordinate facts. There was manifestly some evidence to support a conclusion favorable to the plaintiff, granting his right to the most favorable inferences

that could reasonably be inferred. On all this evidence, whether it was weak or strong, he was entitled to a verdict of the jury. In *Cook* v. *Morris*, 66 Conn. 196, 210, 33 Atl. 994, this court declared that it was not disposed to extend the statute authorizing the trial court to grant a motion for a nonsuit to "any case where the facts claimed as presenting a question of law . . . may depend upon inferences of fact to be drawn from the testimony, as to which inferences the parties may reasonably differ"; and on page 211: "To distinguish between worthless and sufficient testimony is the very purpose for which juries are impaneled." Taking into account the favorable inferences which might legitimately be drawn from the additional testimony, and reckoning it with the evidence previously produced, we think the jury might reasonably have concluded that the indorsement was made before the delivery became effective. In reaching a conclusion from the subordinate facts, it must not be overlooked that to complete the delivery and make it effective, the note must be accepted by the payee. 8 Corpus Juris, 210. Certainly, if it was essential to decide this interjected issue of fact, it should have been submitted to the jury. *Girard* v. *Grosvenordale Co.*, 83 Conn. 20, 74 Atl. 1126.

The record before us discloses, further, that the defendant's counsel, by cross-examination of the plaintiff and his witnesses, brought out some testimony to prove his special defenses of usury in the agreement for the loan and of alteration of the instrument, which were set up in the answer. The trial court properly suggested that this testimony related solely to these defenses, and that the burden of proving them rested on the defendant, and the counsel acquiesced, but were allowed to continue to produce testimony of the same kind during the presentation of the plaintiff's case in

chief. That is, after denying the allegations of the complaint, the defendant admitted their truth when he sought to avoid their effect by setting up new matters. Passing by the inconsistency of such claims, the plaintiff had denied the averments of the new matter. The issues thus made were not on trial while the plaintiff was presenting his evidence upon the general denial of the allegations of his complaint, and neither was he presenting evidence upon these issues while making out a prima facie case, nor did he rest his cause on these issues when he closed his case in chief. *Fitch* v. *Bill,* 71 Conn. 24, 29, 40 Atl. 910. Before he rested his cause, his only burden was to produce evidence enough to make out a prima facie case upon the issues raised by the general denial of the allegations of the complaint. That burden he had sustained if his evidence, undisputed by the defendant and strengthened by every favorable inference of fact that might reasonably be drawn from it, contained any substantial evidence supporting the affirmative of the issues thus made. *Cook* v. *Morris,* 66 Conn. 196, 210, 33 Atl. 944; *Fitch* v. *Bill,* 71 Conn. 24, 30, 40 Atl. 910; 38 Cyc. 1555.

The special defense of usury and the testimony concerning that matter should have had no influence upon the action of the trial court. Behind that defense an indorser could not find protection, because he was not a party to the alleged usurious agreement and could not be injured thereby. This defense was intended to protect an oppressed debtor, and it is optional with him only to take advantage of it. *Reading* v. *Weston,* 7 Conn. 409; *Loomis* v. *Eaton,* 32 Conn. 550; *Continental Credit Co.* v. *Ely,* 91 Conn. 553, 560, 100 Atl. 434; 39 Cyc. 1062.

In the record in this case it is evident that the court could not have granted this motion because the plaintiff had failed to make out a prima facie case by the evi-

dence he produced to prove the allegations of his complaint, but because some matters put forward as special defenses had also, in the opinion of the court, been so clearly proved by the testimony before the jury, when the plaintiff rested his case, as to require no evidence to be presented by the defendant in proof of them. But the court had no authority under our statute to give this effect to its opinion. This is a decisive reason why the action of the trial court cannot be sustained. *Fitch* v. *Bill*, 71 Conn. 24, 29, 40 Atl. 190. The court erred in denying the motion to set aside the nonsuit.

The judgment of nonsuit is set aside and the cause is remanded to be proceeded with as if no nonsuit had been granted.

In this opinion the other judges concurred.