## TONY PIGNATARIO *vs.* SAM MEYERS ET AL.

Third Judicial District, Bridgeport, October Term, 1923.

WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

While a landlord is under no obligation at common law to repair leased premises, aside from a contract to do so, he is liable in damages to a tenant of a part of the building whose stock of merchandise is injured through the negligence of the landlord in allowing water to escape from frozen and bursting water pipes in unoccupied portions of the building which are in his exclusive possession and control. Under such circumstances the landlord is to be held to the same standard of diligence toward the injured tenant as an occupant of the vacant tenement would have been.

The evidence introduced by the plaintiff in the present case reviewed and *held* to have made out a prima facie case of negligence upon the part of the defendant landlord.

In passing upon a motion for a nonsuit, the trial court is not concerned with the legal sufficiency of the complaint.

Argued October 26th, 1923—decided January 8th, 1924.

ACTION to recover damages for the alleged negligence of the defendants in allowing water to escape from pipes in their building and injure the plaintiff's merchandise in one of the tenements leased and occupied by him as a grocery store, brought to the Court of Common Pleas in New Haven County where the plaintiff was nonsuited in a trial to the jury before *Booth, J.,* and from the refusal of the court to set aside such judgment the plaintiff appealed. *Error and new trial ordered.*

The complaint in this action alleges that at the time of the injury stated therein, plaintiff was tenant of a certain store in the city of New Haven by virtue of a lease with defendants' grantor, in which he conducted the business of selling groceries and meat; that there was a tenement in the building of defendants above said store at that time and before, which was vacant

and in the possession and control of defendants, which tenement contained water pipes used to carry water from the public city supply thereto; that this tenement at the times mentioned was without sufficient heat to prevent the water pipes from freezing, and on February 19th, 1922, the water in these pipes froze and the pipes burst, allowing water to escape therefrom on the floor of the tenement, which flowed through the floor, walls and ceilings of the building and down upon the stock of goods in the plaintiff's store and damaged the same.

It was further alleged that the injury to plaintiff's goods was due to the negligence of the defendants in failing to provide sufficient heat in this vacant and unoccupied tenement to prevent the water pipes from freezing, to their neglect and failure to turn off the water in the pipes in the tenement to prevent freezing, and to their failure to take reasonable precautions to prevent the water in the pipes from freezing and bursting the same.

By reason of the facts alleged, plaintiff lost a large amount of his stock, and incurred an expense of $50 in removing, handling and cleaning damaged goods.

The transcript of the evidence shows that the following material facts might have been found: The plaintiff had occupied the store above mentioned in the business of selling meats, groceries, vegetables and fruit since July 7th, 1920, and was so engaged on February 19th, 1922. The store was part of a frame building in which there were four tenements, one of which was above the store occupied by plaintiff, and one upon the same floor, both on the date last named unoccupied, and the one above the plaintiff had been unoccupied about three weeks, and the former tenants thereof had moved on account of lack of heat. There were shelves on both sides of the store, and those upon one side con-

tained groceries and boxed packages of goods, con-
stituting stock as yet unopened and undisplayed. The
date last mentioned fell on Sunday. Plaintiff had
closed his store shortly before midnight the day before,
and on this Sunday morning entered his store, and found
that water had flowed down through the metal ceiling
through several apertures and upon the goods just
described, and thence had run down upon the floor
flooding the same. Plaintiff seized a cleaver and cut a
hole in the floor to let the water flow out. Descending
to the cellar, plaintiff attempted to shut the water off,
but did not know how to do it, and sent for a plumber
who shut the water off, but water continued to flow
during the entire day and was dripping the next day.
Directly after the store was opened Sunday morning,
the defendant Katie Meyers came in and made a pur-
chase, and plaintiff called her attention to the leakage.
The shut-off cock was in a part of the cellar which con-
tained toilet fixtures, and was open in common to all
of the tenants of the building. The plaintiff, with the
assistance of several persons, then proceeded to remove
and clean his stock of goods, which was considerably
damaged. The amount of damage is not material to
the questions before us.

For some days preceding the date of injury the
weather had been cold with a temperature below the
freezing point. At about the date of the occurrence the
temperature had risen and was above the freezing point.

At the date of the injury the defendant Katie Meyers
was the sole owner of the premises.

At the conclusion of plaintiff's case a motion for a
nonsuit was granted, and a motion to set the same
aside was denied.

*Joseph I. Shrebnik*, with whom, on the brief, was
*Arthur B. O'Keefe*, for the appellant (plaintiff).

*Edward G. Levy,* for the appellees (defendants).

KEELER, J. There is no obligation at common law on the part of a landlord to make repairs upon leased property or to keep the same in safe condition, apart from a contract so to do. *Gallagher* v. *Button,* 73 Conn. 172, 175, 46 Atl. 819; *Valin* v. *Jewell,* 88 Conn. 151, 156, 90 Atl. 36. The lease (Exhibit B) in the instant case imposes no such liability. In this case there is no contractual liability, and the action is one purely of tort, and must show some primary right of plaintiff's invaded by defendants. It appears to be established by the evidence that the tenement above the store of plaintiff had been unoccupied by any tenant for about three weeks previous to the occurrence from which damages are claimed, and it is a valid and persuasive inference, in the absence of any suggestion to the contrary, that the same was in the exclusive possession and control of defendants. They were charged with the duty of so controlling and managing the premises, that through their negligence no injury should be inflicted upon anyone, whether a tenant of another portion of the building or a stranger in no legal relation, contractual or otherwise, with them. There seems to be no reason in law, that they should not be held to the same standard of diligence toward the plaintiff, as would have been a tenant in possession of the vacant tenement. The ground of liability therefore is the negligence of the landlord.

In *Priest* v. *Nichols,* 116 Mass. 401, it appeared that goods of a tenant had been injured by the escape of water from a waste pipe of an engine situated in another part of the building, by reason of the landlord's negligence, and the court held that recovery might be had from the landlord. In the opinion the court says: "The rule that a landlord is not bound to keep the

premises of his tenant in repair, and therefore cannot be held responsible for negligence, if out of repair, has no application to the facts presented in this case." To the same effect are *Gluckauf* v. *Maurer*, 75 Ill. 289; *Toole* v. *Beckett*, 67 Me. 544; *Moore* v. *Goedel*, 34 N. Y. 527, 532. The latter is a leading case, and was followed in *Martin* v. *Coleman*, 14 Misc. (N. Y.) 505, 35 N. Y. Supp. 1069; *Levy* v. *Korn*, 30 Misc. (N. Y.) 199, 61 N. Y. Supp. 1109; *Simon-Reigel Cigar Co.* v. *Gordon-Burnham Battery Co.*, 20 Misc. (N. Y.) 598, 46 N. Y. Supp. 416; *Greco* v. *Bernheimer*, 17 Misc. (N. Y.) 592, 40 N. Y. Supp. 677. The New York cases above cited not only maintain the rule of the landlord's responsibility, but also hold that the doctrine of *res ipsa loquitur* applies from the mere fact of the unexplained flow of the water. It would appear that the facts in the instant case bring it within the rulings of this court in that regard as set forth in *Stebel* v. *Connecticut Co.*, 90 Conn. 24, 96 Atl. 171, but upon the pleadings and the evidence therein, we do not think it necessary to invoke this rule. The general rule derived from the cases above cited is stated in 1 Tiffany, Landlord & Tenant, p. 622, § 88.

Applying the above considerations to the present case, we are to inquire whether the evidence produced by plaintiff at the trial presented a prima facie case of negligence on the part of the defendants in the care, management and inspection of the unoccupied tenement above the store. There had been for sometime previous to the occurrence of the injury very severe weather with temperatures as shown by the weather report figures, Exhibit A in the case, which could scarcely fail to freeze water in a room not heated and to cause water pipes to burst, and then for a day or two a considerably higher temperature adequate to thaw out the pipes and liable to cause a flow of water to descend through

the ceiling and cause damage to the plaintiff's goods. The landlord must have known of this, and especially as one tenant had recently left the building by reason of its coldness. Unless it can be held as a matter of law that a landlord need pay no attention to plumbing under his control in vacant tenements, so far as the condition of this plumbing may affect tenants in adjoining and lower parts of the building, with respect to weather or any other agency likely to damage such plumbing, it seems clear that the situation presented in the instant case, unexplained or justified in any legal way, discloses facts calling for a defense upon its merits. The fact that the defendant Katie Meyers, sole owner of the building, entered the store while the water was still leaking through the ceiling and that her attention was called to the fact, is not without significance. Some damage was probably done after that, as she was waited upon before plaintiff went to the plumber. The evidence in the case was of such character that conceding to plaintiff all the favorable inferences reasonably to be drawn thereupon, he was entitled to have it considered whether weak or strong.

In considering the case presented on a motion for a nonsuit, the court was not concerned with the sufficiency of the complaint in point of law; there are other ways provided to test that matter. The sole question before the trial court was whether, upon the allegations of the complaint and the admissions and denials in the subsequent pleadings, sufficient facts had been proved to make out a prima facie case. *Thames Steamboat Co.* v. *Housatonic R. Co.,* 24 Conn. 40, 49; *Cook* v. *Morris,* 66 Conn. 196, 204, 33 Atl. 994; *Fitch* v. *Bill,* 71 Conn. 24, 30, 40 Atl. 910; *Girard* v. *Grosvenordale Co.,* 83 Conn. 20, 25, 74 Atl. 1126; *Pentino* v. *Pappas,* 96 Conn. 230, 232, 113 Atl. 451; *Baggish* v. *Offengand,* 97 Conn. 312, 320, 116 Atl. 614; *Galvin* v. *Birch,* 98 Conn. 228, 231,

118 Atl. 826. The plaintiff, upon the evidence produced, was entitled to a full trial upon the merits of the controversy.

There is error and a new trial is ordered.

In this opinion the other judges concurred.