EMELIE C. W. MENARD *vs.* CLARENCE E. THOMPSON ET AL.

Third Judicial District, Bridgeport, October Term, 1915.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A broker is not to be charged with fraudulent representations or with a false warranty, in the absence of any evidence of an intent to deceive, merely because he tells a customer that stocks are not considered to be as conservative and reliable an investment as first mortgage bonds, since the former are not secured upon any specific property while the latter are, thus giving them a more stable and certain value which can be realized at any time at any broker's office. Such statements, especially if induced by the customer's inquiries and suggestions, are mere trade talk, and moreover, generally speaking, are true.

A verdict may properly be directed where but one conclusion can fairly and reasonably be drawn from the evidence.

A warranty that a first mortgage railway bond is well secured is not a warranty that the security shall continue ample during the life of the bond; the warranty is met if the bond is well secured at the time of its sale.

The evidence in the present case reviewed and *held* to negative the plaintiff's claim that there had been a breach of the defendants' warranty of the salability of the bond purchased by her.

Argued October 27th—decided December 17th, 1915.

ACTION to recover damages for alleged fraud and for breach of warranty in the sale of a mortgage bond, brought to the Superior Court in New Haven County and tried to the jury before *Tuttle, J.;* the court, upon motion of the defendants, directed a verdict in their favor, from the judgment upon which the plaintiff appealed. *No error.*

*Charles S. Hamilton,* for the appellant (plaintiff).

*William B. Stoddard* and *Jacob P. Goodhart,* for the appellees (defendants).

THAYER, J.   In June, 1906, the defendants, who are bond brokers in New Haven, sold to the plaintiff a bond of the Norwich and Westerly Railway Company.   In the first count of her complaint the plaintiff alleges that deceit and false representations were successfully used by the defendants to induce her to purchase the bond, and in the second count she alleges that the defendants warranted the bond to be a first mortgage bond well secured and a safe investment, and that this was not true.   The facts alleged in the second count to have been falsely warranted were the same as those alleged in the first count to have been falsely represented to be true.   Each count, in addition to the allegations that the defendants represented the bond to be a first mortgage bond well secured and a safe investment, contains allegations that the defendants represented that the bond was readily salable at any time for the price at which the plaintiff purchased it, and that she could at any time obtain that price for it by presenting it at the office of the defendants or other brokers, and that it was better than the preferred stock of the United States Steel Company.

The evidence introduced by the plaintiff, so far as it

tended to prove the last-named allegations, shows that, in reply to a statement of hers that she had been considering the purchase of preferred stock of the United States Steel Company, the defendants said to her that stocks were not considered to be as conservative investments as first mortgage bonds because they were not secured upon any specific property and the dividends might be passed, but that mortgage bonds were secured upon specific property upon which the holders of the bonds could levy in case of default of payment, and that such bonds had a less speculative and more fixed value and could at any time be realized upon at the defendants', or any broker's, office.

This was mere trade talk induced by the plaintiff's suggestions and inquiries, and related, not to the specific bond now in question, but to mortgage bonds in general, such as the defendants were recommending as proper securities for her to invest in. It can hardly be denied that these statements, speaking generally, are true. There was nothing in the evidence tending to show that they were made with any fraudulent intent on the part of the defendants to deceive the plaintiff, and the evidence affords no foundation for a claim that they constituted a false warranty or fraudulent representations inducing the purchase of the bond in question.

As to the remaining allegations there was some evidence tending to prove that the defendants told the plaintiff that the bond was a first mortgage bond well secured and a safe investment, and that they warranted it to be so. This was denied in the defendants' testimony, but if there was testimony of such a warranty and evidence tending to prove that it was false, a verdict should not have been directed, but the evidence should have been submitted to the jury. *Cook* v. *Morris*, 66 Conn. 196, 211, 33 Atl. 994; *McVeigh* v. *Ripley*, 77 Conn. 136, 141, 58 Atl. 761; *Robbins* v.

*Hartford City Gas Light Co.*, 82 Conn. 394, 396, 74 Atl. 113.

The plaintiff, we think, failed to show the falsity of the warranty thus testified to by her. Her evidence fully established the fact that the bond was a first mortgage bond secured by a first mortgage upon all the property of the corporation which issued it. She also proved that the mortgaged property was sold, upon an order of court in foreclosure proceedings in behalf of the bondholders, for more than $180,000 in excess of the bond issue and for enough to pay the bondholders in full for the face of the bonds and accrued interest to the date of the sale. Her evidence also showed that for three years after she purchased the bond the interest coupons were paid. It is true that it also appeared that in September, 1909, more than three years after she purchased the bond, interest was defaulted. This might have resulted from mismanagement of the property by the corporation and therefore did not prove that the bond was not well secured. A warranty that a railway bond is well secured does not extend so far as to warrant that the value of the corporate property shall not during the life of the bond be depreciated or destroyed by the mismanagement of its officers. The warranty alleged relates to the bond and the security as it was at the time of the sale. It was not a warranty that the investment should continue safe during the entire thirty years which the bond had to run. If the bond was well secured at the time of its sale by a first mortgage of all the company's property, it was then a safe investment and the warranty was fulfilled, and, as above stated, there is no evidence showing that it was not then well secured and safe.

But the plaintiff claims that the defendants also warrented the salability of the bond at any time at any broker's office, and for the amount paid by her for it,

and that such warranty was broken. The evidence, however, does not disclose a breach; on the contrary, it appears that the plaintiff has sustained no loss, at least none which the defendants were bound to make good. It appears from the evidence that the mortgage securing her bond was foreclosed by the treasurer of the State, to whom, as trustee for the bondholders, the mortgage was executed, and the mortgaged property sold for more than sufficient to pay the face of all the bonds covered by it, with the interest accrued to the date of the sale. It appeared, also, that under a bond-holders' agreement the bonds were deposited with a trust company as trustee for the bondholders, and that after the foreclosure a new corporation was organized to take over the railroad by an issue of new securities to be turned over to the old bondholders in place of their bonds, and that the plaintiff is now refusing to accept such new securities upon the ground that her bond was delivered to the trust company by a pledgee thereof without her consent. If she is right in her claim, it would seem that she is entitled to her share of the proceeds of the foreclosure sale which would pay her in full for her bond, and if she is wrong in her claim, and her bond was deposited with the trust company by her or by her pledgee with her consent pursuant to the bondholders' agreement, then she is entitled to the new securities which she agreed to accept in place of her bond. There being no evidence of a breach of the defendants' warranty, the jury could not have found that there was one, and a verdict for the defendants was properly directed.

It becomes unnecessary to consider the question of evidence raised by the appeal.

There is no error.

In this opinion the other judges concurred.