INGLEHARDT, Administrator, Appellant, vs. MUELLER, Respondent.

*March 18—April 9, 1914.*

*Landlord and tenant: Safety of hallway in apartment building: Duty of lessor: Lease construed: Negligence: Death of child.*

1. Where, by the terms of a lease of an apartment in his building, the lessor retained possession and control of a hallway and the fixtures therein, it being expressly declared that such hallway was not leased and was only to be used by the lessee for ingress and egress, it was the lessor's duty to maintain the hallway in a reasonably safe condition for such use by his tenants.
2. Where, in such case, a radiator in the hallway fell, by reason of being insecurely attached to the wall, and killed a child of the lessee, and the lessor ought, in the exercise of ordinary care, to have discovered the danger and repaired the fastening before the time of the accident, the lessor was guilty of actionable negligence even though he had no actual knowledge of the defect.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed.*

This is an action to recover damages for the death of Gor-

don William Inglehardt, seven years of age, the son of the plaintiff, who died as a result of a four-section, 255-pound radiator falling on him. The radiator was attached to the wall of the entrance of an apartment building in which decedent and his parents lived. The decedent's father entered into a lease with the defendant, *Mueller*, the owner of the building, on or about the 31st day of October, 1911, whereby *Mueller* leased to the plaintiff an apartment on the first floor of this building. The following are covenants in the lease:

"*Not liable.*—It is mutually agreed and understood that the said lessor shall not be liable for any damage occasioned by failure to keep said premises in repair, and shall not be liable for any damage done or occasioned by or from plumbing, gas, water, steam or other pipes, or sewerage, or ,the bursting, leaking or running of any cistern, tank, washstand, water-closet or waste pipe in, above, upon or about said building or premises, nor for damage occasioned by water, snow or ice being upon or coming through the roof, skylight, trap door or otherwise, or for any damage arising from acts or neglect of cotenants or other occupants of the same building." . . .

"*To be kept clean.*—It is mutually agreed and understood that the said lessee shall keep the said premises in a clean and tenantable condition.

"*Repair to plastering, plumbing, etc.*—That said lessee will make all repairs required to the walls, ceiling, paint, plastering, plumbing work, pipes and fixtures belonging to said apartments, whenever damage or injury to the same shall have resulted from misuse or neglect, to be replaced in former condition with materials of equal quality, and to the satisfaction of lessor, or that said lessor may make such repairs and charge the same to said lessee, and that said lessee will pay the entire expense thereof.

"*Halls.*—It is distinctly understood that the front and rear halls, laundry, lawn and back yard are not leased, but the hallways may be used by the lessee for ingress and egress."

In the front hall of the building the above mentioned radiator.was attached to the wall some two and one-half feet from the floor. It rested upon two hooks or braces screwed into a

timber which was fastened to the wall with screws extending through the lath and plaster.   Two hooks at the top were so fastened to the wall as to hold the top in against the wall.

On the day of the accident the deceased and his mother came into the hall.   At this time the decedent, who was on his way out through the hall, observed a funeral passing, stopped to see it, and placed one foot, lightly, on the wheel valve of the radiator, his other foot resting on the second step, which was about on a level with the valve.   While in this position the radiator suddenly fell upon the decedent and injured him to an extent which caused his death within about twenty minutes.

The action was tried in the civil court of Milwaukee county to the court without a jury.   This court found that the defendant, *Mueller,* neglected to have the hall radiator securely fastened to the wall by failing to provide proper and safe hooks at the top thereof to hold it firmly in place and prevent its falling by turning out from the wall as it did when it fell on this boy; that the defendant in the exercise of ordinary care ought, before the day of this accident, to have discovered that this radiator was not securely fastened to the wall and should have caused it to be securely and safely attached and held in place; that he as a man of ordinary intelligence ought. to have foreseen that the danger of the radiator falling from its place would likely cause some one an injury; that such negligence of the defendant was the proximate cause of the decedent's death; and awarded the plaintiff judgment for the recovery of damages in the sum of $1,500.

An appeal was taken from this judgment to the circuit court for Milwaukee county.   On the hearing of the case before the circuit court upon the record, the circuit court considered that the evidence sustained the facts found by the civil court in so far as that court found that the radiator was negligently left in an unsafe condition of attachment to the wall; that the defendant in the exercise of reasonable care ought, before the time of this accident, to have discovered this

defective condition of suspending the radiator, and that he in the exercise of ordinary care ought to have discovered and repaired this defect in placing the radiator; and that this proximately caused the decedent's death. But the court found that the defendant, under the relationship existing between defendant and the plaintiff as his tenant, owed no legal duty toward the plaintiff and the decedent to have the radiator securely and safely fastened to the wall to prevent its falling on the decedent as it did, and that no cause of action existed in the plaintiff's favor to sustain the judgment awarded by the civil court, and therefore reversed the same and awarded judgment in the defendant's favor dismissing the plaintiff's complaint. This is an appeal from the judgment of the circuit court.

For the appellant there was a brief by *Glicksman, Gold & Corrigan,* attorneys, and *Joseph E. Tierney,* of counsel, and oral argument by *W. L. Gold.*

*James T. Drought,* attorney, and *Lawrence A. Olwell,* of counsel, for the respondent.

Siebecker, J. The circuit court in awarding judgment dismissing the plaintiff's complaint held that the defendant, under his relationship to the plaintiff and family resulting from the provisions of the lease letting to the plaintiff the apartment adjoining the hall of the building where this radiator was located, owed no duty to have the radiator safely attached to the wall of the building, because the hall constituted a part of the leased premises. As shown in the foregoing statement, the lease contained the following provision respecting the hallways:

"It is distinctly understood that the front and rear halls, laundry, lawn and back yard are not leased, but the hallways may be used by the lessee for ingress and egress."

At the trial of the case the civil court found that "said *August Mueller* did actually undertake to keep the hallway in safe, suitable, and proper repair and condition for use by

the said .W. A. *Inglehardt* and members of his family, the public, and the other tenants and members of their families in said apartment building." On appeal the circuit court held that the civil court erred in this conclusion 'because "there is no evidence that *Mueller* expressly agreed to keep the hallway in safe, suitable, and proper repair and condition for use. To that extent the finding as well as the conclusion that *Mueller* had agreed and that it was the duty of *Mueller* to keep the hallway in such condition are without support." The circuit court declares that no such agreement can be implied from the provisions in the lease, and refers to *Kuhn v. Sol. Heavenrich Co.* 115 Wis. 447, 91 N. W. 994, as applicable to this case. That case is one wherein the tenant sought to recover damages to his goods caused by an alleged want of repair, for breach by the landlord of an implied covenant to repair. We have no such case before us. · The cause of action in the instant case is for damages alleged to have been caused by the defendant's negligence in that he failed to perform his legal duty to have the radiator securely and safely attached to the wall in the hall of the building. .The ques-. tion is, Was it defendant's legal duty, under the relation of the parties, to have this radiator securely and safely attached to the wall and thus prevent injury to persons lawfully using the hall? The stipulation in the lease above quoted clearly indicates that the defendant retained possession and control of the hall and the fixtures therein; for it expressly declares that the hall is not leased and that it was only to be used by the tenants for ingress and egress. The defendant's acts and conduct in caring for and controlling the hall clearly indicate that he understood the hall and its contents were not leased and remained in his possession. He exercised full control· over it and maintained it for use in connection with the prem-, ises leased to the various tenants of the building. It ·is also provided in the lease that the premises leased to the plaintiff were to be kept in repair and in a clean and tenantable condition by the lessee. It is undisputed that these provisions im-

posed no duties on the plaintiff to repair and keep clean and tenantable the hallway.    From these conditions of the lease it is manifest that the hallway was no part of the premises leased and that the defendant retained possession thereof.    In the light of the relationship of the parties as established by the lease, under which the defendant expressly undertook to provide this hall for the tenants occupying the leased portions of the premises for ingress and egress, it is manifest that it was the defendant's duty to maintain the hall in a reasonably safe condition for such use by his tenants.    The facts as found by the trial court show that the defendant failed to perform this duty and that his failure to do so caused the radiator to tip over and fall on the decedent, producing his death.    As this court declared in referring to the case of *Looney v. McLean,* 129 Mass. 33, "the landlord was held liable to his tenant for negligence upon the same principle that he would have been to a stranger for inducing a tenant to use a portion of the building which he undertook to keep in order, knowing that it was unsafe."    True, it is not found that the defendant had actual knowledge that this radiator was insecurely fastened to the wall, but the trial court found on ample evidence that the defendant in the exercise of ordinary care ought to have discovered this danger and ought to have repaired it before the time of this accident, and that he ought to have foreseen that his neglect in this respect might cause an injury to persons lawfully using this hall.    Under the facts established and found by the trial court the defendant was guilty of actionable negligence, and the judgment awarded by the trial court is sustained by the record.    It follows that the circuit court erred in reversing the judgment of the civil court.    For precedents showing upon what grounds the circuit court can reverse a judgment of the civil court of Milwaukee county, see *Pabst B. Co. v. Milwaukee L. Co., post,* p. 615, 146 N. W. 879, and *Hanna v. C., M. & St. P. R. Co., post,* p. 626, 146 N. W. 878.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded to the circuit court with direction to enter judgment affirming the judgment entered by the civil court, and for costs.