REBECCA CHAMBERS *vs.* MARY A. LOWE.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued November 8th—decided December 7th, 1933.

*Isadore E. Finkelstein,* for the appellant (plaintiff).

*Robert L. Halloran,* with whom, on the brief, was *Wilson C. Jainsen,* for the appellee (defendant).

MALTBIE, C. J. The plaintiff is a child who was about three years old when this action was tried. She lived with her parents in a tenement house owned by the defendant and suffered injuries by reason of the falling of a section of plaster from the ceiling of a room in which she was sleeping. The apartment occupied by the family consisted of five rooms with a large hall. It was rented from the defendant, and the trial court states in the finding that it was in the sole control of the plaintiff's father and family, the defendant having no right of entry except such as might be extended to her by the plaintiff's father. The plaintiff rests her right to recover solely upon the provision in § 2563 of the General Statutes that "each building used as a tenement, lodging or boarding house and all parts thereof shall be kept in good repair." The question presented is, does this provision give a right of action against the owner of a tenement house due to a lack of repair in an apartment rented as a whole and which is found to be in the exclusive control of the tenant?

Granted that the language of the statute is in itself broad enough to impose an obligation upon the owner of a tenement house to make ordinary repairs in an apartment and to give to a person injured by a breach of that requirement a cause of action against the owner, it does not necessarily follow that we are bound to give such a literal construction to it, where the

result will be to carry its effect beyond the intent of the legislature. *Bridgeport* v. *Hubbell,* 5 Conn. 237, 243; *National Fireproofing Co.* v. *Huntington,* 81 Conn. 632, 634, 71 Atl. 911; *Stamford* v. *Stamford,* 107 Conn. 596, 606, 141 Atl. 891; *Merchants Bank & Trust Co.* v. *Pettison,* 112 Conn. 652, 655, 153 Atl. 789. In determining the legislative intent, we must look beyond the literal meaning of the words to the history of the law, its language considered in all its parts, the mischief it was designed to remedy and the policy underlying it. *Merchants Bank & Trust Co.* v. *Pettison, supra; State* v. *Giant's Neck Land & Improvement Co.,* 116 Conn. 119, 124, 163 Atl. 651; *Savings Bank of Rockville* v. *Wilcox,* 117 Conn. 183, 193, 167 Atl. 709.

The chapter in the General Statutes which contains the provision in question was first enacted in 1911 and was entitled "An Act concerning Sanitary Conditions in Tenement, Lodging, and Boarding Houses." Public Acts, 1911, Chap. 220. It dealt particularly with sanitary conditions in these buildings, as distinguished from provisions regulating the method of their construction, an Act concerning which, as regards tenement houses, was passed at the same session of the legislature. Public Acts, 1911, Chap. 241. The former Act began with certain definitions of the terms used in it, which are still a part of our law. General Statutes, § 2562. It stated that the words "tenement house" should mean: "Any house or building, or portion thereof, which is rented, leased, let, . . . or is occupied, as the home or residence of three or more families living independently of each other and doing their own cooking upon the premises, and having a common right in the halls, stairways, or yards;" and it went on to state that the word "apartment" should mean "a room or suite of rooms occupied or designed

to be occupied as a family domicile." The third section of the Act provided that "every tenement house, and all parts thereof, shall be kept in good repair, and the roofs shall be so kept as not to leak and all rain water shall be so drained and conveyed therefrom as to prevent its dripping onto the ground or causing dampness in the walls, ceilings, yards, or areas."

If the definitions we have quoted be applied to this provision of the law it at once becomes apparent that the legislature had in mind the imposition of an obligation to keep the building in repair as distinguished from the separate apartments in it; and this fact is emphasized if regard be had to the provision made as to roofs and drainage. Indeed, had it intended to include the case of ordinary repairs within an apartment it would be natural to suppose that the statute would have been so drawn as to evince that intent. In 1913 the language of the section was changed to its present form, so that in place of the words "every tenement house" it was made to read "every building used as a tenement, lodging, or boarding house." Public Acts, 1913, Chap. 29. § 1. One purpose of this amendment was obviously to include in the provision lodging and boarding houses; but the reason for inserting the words "building used as" a tenement, lodging or boarding house, is not apparent. At any rate, the insertion of the word "building" does not detract from but rather emphasizes that the legislative intent was directed to the building as a whole rather than to the separate apartments within it.

Light upon the legislative intent can also be gathered from another provision of the Act. As originally passed it contained a provision that every tenement, lodging, or boarding house, and every part thereof, should be kept free from dirt or filth, and required "the owner" of every such house or part thereof to cleanse it.

Public Acts, 1911, Chap. 220, § 2. In 1917 this was amended so as to read substantially in its present form, imposing the obligation to cleanse the various portions of the house upon "the owner, tenant, lessee or occupant" of it or any part of it of which he is "the owner, tenant, lessee or occupant." Public Acts, 1917, Chap. 227; General Statutes, § 2563. Apparently this change was made because of the realization that the obvious purpose of this portion of the law, to secure sanitary conditions in tenement houses, could only be accomplished when the apartments within them, with their accessories, were kept clean; and the reason for not enacting a like extension as regards repairs is no doubt found in the fact that a lack of repair in one apartment does not have the same relationship as does the failure to keep it clean, to sanitary living conditions in others.

At common law, in the absence of some agreement, there is no obligation upon a landlord to make repairs upon leased property or to keep it in a safe condition. *Pignatario* v. *Meyers,* 100 Conn. 234, 237, 123 Atl. 263; *Gallagher* v. *Button,* 73 Conn. 172, 176, 46 Atl. 819; *Lesser* v. *Kline,* 101 Conn. 740, 744, 127 Atl. 279; *Rumberg* v. *Cutler,* 86 Conn. 8, 10, 84 Atl. 107; *Newman* v. *Golden,* 108 Conn. 676, 677, 144 Atl. 467; *cf. Farguet* v. *DeSenti,* 110 Conn. 367, 148 Atl. 139; *Vinci* v. *O'Neill,* 103 Conn. 647, 121 Atl. 408. If the plaintiff has a right to recover it must be because the legislature in the statute in question intended to change this common-law rule and to make a very important and far-reaching extension of the obligations of a landlord. That the statute has not been generally understood to have such an effect is apparent from the decisions we have cited, all but two of which involved causes of action arising after it was originally enacted. We would hesitate to attribute to the legislature an intent to

make such a drastic change in the established relationship of landlord and tenant unless the statute clearly evinced that intent. *Stoll* v. *Judd Co.*, 106 Conn. 551, 556, 138 Atl. 479; *Vallen* v. *Cullen*, 238 Mass. 145, 147, 130 N. E. 216.

At common law, an obligation rests upon a landlord to exercise reasonable care to keep reasonably safe those parts of the building owned by him which are in his control. *Hurlburt* v. *Sherman*, 116 Conn. 102, 105, 163 Atl. 603. This is the basis upon which rests the duty of the owner of a tenement building to keep its common passways reasonably safe; *Koskoff* v. *Goldman*, 86 Conn. 415, 424, 85 Atl. 5; *Looney* v. *McLean*, 129 Mass. 33, 35; *Starr* v. *Sperry*, 184 Iowa, 540, 167 N. W. 531; *Inglehardt* v. *Mueller*, 156 Wis. 609, 146 N. W. 808; and to and over them he has a clear right of entry at all times to inspect and repair. *Sawyer* v. *McGillicuddy*, 81 Me. 318, 17 Atl. 124. It is far more reasonable to conclude that the legislature had in mind similar considerations in enacting the law in question than that it intended to give to the owner of a tenement house a broad right to enter a leased apartment to inspect its condition and to disturb the life of its occupants at his will rather than at theirs.

The lack of ordinary repair in an apartment may be the cause of loss or injury to the tenant occupying it, his family or those who come to visit it, but ordinarily it cannot have any harmful effect upon the tenants of other apartments. The purpose of the Act was obviously to protect the occupants of the buildings included in it against conditions which might endanger their health or security as a class. Indeed, if the exigencies of this case required, we would have to consider whether an obligation upon the owner of a tenement house, as that is defined in the Act, to make ordinary repairs within an apartment he had leased

would have an adequate basis in the police power and would not run counter to other constitutional guaranties. Be that as it may, to give to the provision in question the construction which is claimed, would be to force the law beyond the reasonable necessities of the policy underlying it. The language and history of the Act taken as a whole does not require that construction, indeed, indicates a contrary legislative intent. The trial court was not in error in holding that it does not place upon the owner of a tenement house an obligation to make such ordinary repairs within the apartments which he has leased, as might have prevented the injury to the plaintiff.

We are aware that the New York Court of Appeals has taken a different view of a statute very like our own, and has held that it imposes liability upon the owner of a tenement house for damages due to a lack of repairs in an apartment, at least as regards defects which have relation to the building as a tenantable habitation, and after notice to the owner, actual or constructive, of the defect. *Altz v. Leiberson*, 233 N. Y. 16, 134 N. E. 703. On the other hand, our conclusion accords with that reached by the Supreme Judicial Court of Massachusetts in construing a similar statute. *Vallen v. Cullen, supra.*

There is no error.

In this opinion the other judges concurred.