PACKARD MOTOR CAR COMPANY
· v.
UNEMPLOYMENT COMPENSATION COMMISSION.

1. UNEMPLOYMENT COMPENSATION—PREGNANCY.
    Holding of circuit court that claimant was disqualified from receiving benefits for duration of unemployment after she voluntarily quit employment because of pregnancy is reversed on appeal of a base-period employer and claimant *held*, entitled to benefits under the unemployment compensation act from time when claimant was found able and available for work after the birth of the child and had met other eligibility requirements (Act No. 1, § 29, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 246, Pub. Acts 1943). ·
    BUSHNELL, C. J., and BUTZEL and CARR, JJ., dissenting.

2. COSTS—UNEMPLOYMENT COMPENSATION—PREGNANCY—CONSTRUCTION OF STATUTE AND REGULATION—PUBLIC QUESTION.
    No costs are awarded on appeal in proceeding to recover unemployment compensation benefits after claimant who left employment because of pregnancy was found able and available for work after the birth of her child, where case involved the

construction of a statute and rule promulgated thereunder . (Per Sharpe, Boyles, Reid, North, and Dethmers, JJ.), and involved a public question (Per Bushnell, C. J., and Butzel and Carr, JJ.).

Appeal from Ingham; Coash (Louis E.), J.  Submitted October 14, 1947.  (Docket No. 42, Calendar No. 43,850.)  Decided February 16, 1948.

Certiorari by Packard Motor Car Company, a Michigan corporation, to review order of Unemployment Compensation Commission Appeal Board granting compensation to Lena Catherine Rokich. Order of appeal board reversed.  Claimant appeals. Unemployment Compensation Commission cross-appeals.  Reversed.

*Bodman, Longley, Bogle, Middleton & Armstrong* (*Grant E. Armstrong* and *Alfred ·C. Wortley, Jr.,* of counsel), for plaintiff.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *George M. Bourgon,* Special Assistant Attorney General, for defendant Unemployment Compensation Commission.

*Maurice Sugar* and *Ernest Goodman,* for claimant.

Sharpe, J.  Claimant, Lena Catherine Rokich, appeals from a circuit court judgment reversing a decision allowing unemployment compensation benefits by the appeal board of defendant commission.

The facts are not in dispute and are as follows: Claimant was employed by the Packard Motor Car Company from June 12, 1944, to November 27, 1944, at which time she was laid off for lack of work.  On

· December 14, 1944, she obtained work at Sam's Cutrate, Inc., in Detroit and continued there until January 12, 1945, when she voluntarily quit her job because of pregnancy. Her baby was born in September, 1945. On January 24, 1946, she applied to the Michigan unemployment compensation commission for unemployment benefits. On March 6, 1946, she applied for work at Sam's Cutrate, Inc., and was informed that no work was then available.

On March 12, 1946, the commission determined that Lena Catherine Rokich had left the employ of Sam's Cutrate, Inc., voluntarily because of pregnancy and was available for work and eligible for benefits, under section 28 (c) of the act, beginning March 6, 1946. Claimant appealed from this determination claiming that she was eligible for benefits as of January 24, 1946. On August 26, 1946, the referee affirmed the decision of the commission.

Thereafter, the Packard Motor Car Company, a base-period employer, appealed the decision of the referee to the appeal board. The appeal board on October 28, 1946, affirmed the decision of the referee. Subsequently, upon application of the Packard Motor Car Company, review was had by the Ingham county circuit court by certiorari. On April 5, 1947, the circuit court held that claimant was disqualified for benefits for the duration of her unemployment because she left her employment because of pregnancy.

An appeal is taken to this Court by the claimant and a cross appeal is also taken by the Michigan unemployment compensation commission. Both claimant and the commission are in harmony in contending that claimant is entitled to unemployment benefits after March 6, 1946.

That part of the statute upon which decision is based is Act No. 1, § 29, Pub. Acts 1936 (Ex. Sess.),

as amended by Act No. 246, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8485–69, Stat. Ann. 1946 Cum. Supp. § 17.531), which reads in part as follows:

"SEC. 29.    *    *    *    An individual shall be disqualified for benefits:

"(a)    For the duration of his unemployment in all cases where the individual has either: (1) left his work voluntarily without good cause attributable to the employer,    *    *    *

"(g)    When it is found by the commission that total or partial unemployment is due to pregnancy."

Regulation No. 215 of the commission (Administrative Code [1944], p. 1450) interpreting section 29 (g), prescribed by Act No. 1, § 4, Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 246, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8485–44, Stat. Ann. 1946 Cum. Supp. § 17.504), is as follows:

"(4)    Section 29 (g) provides that an individual shall be disqualified for benefits when it is found by the commission that total or partial unemployment is due to pregnancy.

"The commission accordingly prescribes:

"This disqualification shall begin on the first day of unemployment due to pregnancy and shall end when the individual is no longer pregnant and can establish that she meets all eligibility requirements."

Plaintiff contends that by the language of the act, the disqualification for benefits must last until the claimant has again accepted work in good faith and has actually started such work; that by the enactment of Act No. 360, Pub. Acts 1947, amending section 29 under consideration here, which now provides: "An individual shall be disqualified for benefits    *    *    *    (e) For the duration of her unemployment when it is found by the commission that total or partial unemployment is due to preg-

nancy," it was the intention of the legislature to clarify the original act and make it declaratory of its original intention.

Claimant and the commission urge that section 4 of regulation No. 215 is a valid interpretation of section 29 (g) of the act.

The legislature, within the limits defined in the law, may confer authority on an administrative board to make rules for the purpose of carrying out the legislative policy. See *G. F. Redmond & Co.* v. *Michigan Securities Commission,* 222 Mich. 1; *Argo Oil Corporation* v. *Atwood,* 274 Mich. 47. Under section 4 of the act, the commission is empowered to make rules and regulations, not inconsistent with the provisions of the act, to carry out its provisions. The particular issue in this case is whether the regulation adopted is inconsistent with the provisions of section 29 (g).

When the 1943 amendment to the act was adopted it became the policy of the State to disqualify pregnant women from receiving unemployment benefits. The act in question states that if unemployment, either total or partial, is due to pregnancy the woman is disqualified from such unemployment benefits. The act does not attempt to define the period of time after the birth of the child that unemployment is due to her former pregnant condition. The commission by adopting the regulation in question have attempted to fix that period of time by saying that such disqualification ceases to (exist when she is no longer pregnant and meets all other eligibility requirements.

When the legislature adopted the 1947 amendment it provided that such disqualification should exist for the duration of unemployment when such unemployment, either partial or total, is due to preg-

nancy. It cannot be presumed that the legislature by enacting the above amendment did a futile act. See *Lawrence Baking Co.* v. *Unemployment Compensation Commission,* 308 Mich. 198 (154 A. L. R. 660). It must be presumed that the legislature intended to change the existing law by the enactment of the 1947 amendment.

It must follow that prior to the enactment of the 1947 amendment, the disqualification for benefits due to pregnancy existed only so long after pregnancy as a woman was unable to meet the standards enumerated in section 28 (c) of the act, as amended by Act No. 9, Pub. Acts 1944 (1st Ex. Sess.) (Comp. Laws Supp. 1945, § 8485–68, Stat. Ann. 1946 Cum. Supp. § 17.530). The commission by adopting the regulation in question placed its construction of the meaning of the statute in terms of length of time. In our opinion the regulation adopted was in harmony with the legislation as it existed at the time of its adoption.

Claimant's rights are to be determined under section 29 (g) of the act prior to the 1947 amendment. She is entitled to benefits from March 6, 1946, the date on which the appeal board found she was able and available for work and had met the other eligibility requirements of the act.

The judgment of the circuit court is reversed, but without costs as the construction of a statute and regulation promulgated thereunder is involved.

REID and NORTH, JJ., concurred with SHARPE, J. BOYLES and DETHMERS, JJ., concurred in the result.

BUTZEL, J. (*dissenting*). I am not in accord with the views expressed by Mr. Justice SHARPE in reversing the judgment of the court below. I par-

ticularly take exception to the following sentence in his opinion, upon which his decision is based:

"It must be presumed that the legislature intended to change the existing law by the enactment of the 1947 amendment."

The pertinent portions of section 29 of the unemployment compensation act read as follows at the time this case was decided by the court below:

"An individual shall be disqualified for benefits
\* \* \*

"(g) When it is found by the commission that total or partial unemployment is due to pregnancy."

This provision was amended to read as follows by Act No. 360, Pub. Acts 1947 (Stat. Ann. 1947 Cum. Supp. § 17.531), after the case was decided by the court below:

"An individual shall be disqualified for benefits
\* \* \*

"(e) *For the duration of her unemployment* when it is found by the commission that total or partial unemployment is due to pregnancy."

My Brother takes the position that from the fact of amendment we *must* presume that the legislature intended to change the existing law, and he infers that to take any other position would impute to the legislature the doing of a "futile act." I cannot subscribe to this reasoning.

The primary rule for the interpretation of statutes is that the intention of the legislature should be ascertained and given effect. All other rules serve but as guides to assist in determining the intent with greater degree of certainty. *Kales* v. *City of Oak Park,* 315 Mich. 266; *Gardner-White Co.* v. *State Board of Tax Administration,* 296 Mich. 225; *Posselius* v. *First National Bank—Detroit,* 264

Mich. 687 (90 A. L. R. 342); *City of Grand Rapids*
v. *Crocker,* 219 Mich. 178; *Michigan Central R. Co.*
v. *State,* 148 Mich. 151.

In 50 Am. Jur. p. 203, Statutes, § 224, the relation
between rules of statutory construction and legis-
lative intent is discussed as follows:

"In the interpretation of a statute, the intention
of the legislature is gathered from the provisions
enacted by the application of sound and well-settled
canons of construction.  However, every technical
rule as to the construction of a statute is subservient
and must yield to the expression of the paramount
will of the legislature, since all rules for the inter-
pretation of statutes of doubtful meaning have for
their sole object the discovery of the legislative in-
tent, and are valuable only in so far as, in their ap-
plication, they enable the courts the better to
ascertain that intent. It has even been declared that
the intention of the legislature, when discovered,
must prevail, any rule of construction declared by
previous acts to the contrary notwithstanding."

In two recent Michigan decisions, both of which
arose under the unemployment compensation act,
this Court announced the rule that an amendment
raises a presumption that a change of meaning of
the law was intended.  In neither of these cases
was the rule given any extensive discussion, nor
were the limitations upon the rule defined. Thus,
in *Lawrence Baking Co.* v. *Unemployment Compen-
sation Commission,* 308 Mich. 198 (154 A. L. R. 660),
the majority of the Court held that employees who
had voluntarily quit work to go on strike, and whose
jobs were given to new employees, were entitled to
unemployment benefits under the act *as amended.*
At page 205, the majority of the Court said:

"It *may* be presumed that by the 1941 amendment
the legislature intended to change the meaning of

the existing law. In 59 C. J. p. 1097, § 647, it is stated:

" 'It will be presumed that the legislature, in adopting the amendment, intended to make some change in the existing law, and therefore the courts will endeavor to give some effect to the amendment. So a change of phraseology from that of the original act will raise the presumption that a change of meaning was also intended.' "

The opinion did not include the following limitation upon the rule discussed in the same paragraph of Corpus Juris, *supra,* and which applies to the instant case:

*"The presumption of an intention to change the law falls when its indulgence would violate* a constitutional provision *or the intention of the legislature, or when the amendment is made to express more clearly the original legislative intent* \* \* \* nor does the fact that the legislature amended a statute to incorporate in detail and in specific terms the meaning it had already been construed to have show that it formerly had no such meaning."

A careful reading of the majority opinion in the *Lawrence Baking Company Case* will demonstrate that the decision was based on other grounds than the rule of statutory construction announced in the above quotation.

In *Bonifas-Gorman Lumber Co.* v. *Unemployment Compensation Commission,* 313 Mich. 363, we said:

"It is a general rule of statutory construction that an amendment is to be construed, *unless a different intent is manifest,* as changing the statute amended." (citing *Lawrence Baking Company Case.*)

Here, again, the Court was being called upon to interpret a statute as amended. In this case, the legislature had made a substantial change in the

statute so as to change the test to be applied in cases
such as the one presented. There was no way in
which the language of the statute as it stood before
amendment could be reconciled with the language
of the statute after amendment.

In 1 Sutherland, Statutory Construction (3d Ed.,
1943), § 1930, p. 415, *et seq.,* the rule is discussed
as follows:

"Although a presumption of change in legal rights
is probably reasonable in that an amendment is'
more frequently used to add or take a provision
from a law than to interpret it, the fact of amend-
ment by itself does not indicate whether the change
is of substance or form—whether a right is added
to or taken from the original act, or whether a pro-
vision in the original act is merely being interpreted,
that is, made more detailed and specific. To deter-
mine this, the circumstances surrounding the enact-
ment must be looked to. If they indicate that the
legislature intended to interpret the original act,
the presumption is rebutted."

And in section 1931 of the same work, the author
says:

"If the amendment was enacted soon after con-
troversies arose as to the interpretation of the orig-
inal act, it is logical to regard the amendment as a
legislative interpretation of the original act—a
formal change—rebutting the presumption of sub-
stantial change."

The authorities support the rule that an amend-
ment to an act may be resorted to for the discovery
of the legislative intention in the enactment amended.
There are no principles of construction which pre-
vent the utilization by the courts of subsequent en-
actments or amendments as an aid in arriving at
the correct meaning of a prior statute. See 50 Am.
Jur. p. 328, Statutes, § 337, and the following cases

cited therein: *Great Northern R. Co.* v. *United States,* 315 U. S. 262 (62 Sup. Ct. 529, 86 L. Ed. 836); *Domarek* v. *Bates Motor Transport Lines* (C. C. A.), 93 Fed. (2d) 522; *Wholesale Tobacco Dealers Bureau of Southern California* v. *National Candy & Tobacco Co.,* 11 Cal. (2d) 634 (82 Pac. [2d] 3, 118 A. L. R. 486); *Barnes* v. *Anderson National Bank of Lawrenceburg,* 293 Ky. 592 (169 S. W. [2d] 833, 145 A. L. R. 1066); *In re Hurle,* 217 Mass. 223 (104 N. E. 336, L. R. A. 1916 A, 279, Ann. Cas. 1915 C, 919); *Layman* v. *State Unemployment Compensation Commission,* 167 Ore. 379 (117 Pac. [2d] 974, 136 A. L. R. 1468); *Wallenstein* v. *Hartford Accident & Indemnity Co.,* 21 N. J. Misc. 378 (34 Atl. [2d] 402); *Stanford* v. *Butler,* 142 Tex. 692 (181 S. W. [2d] 269, 153 A. L. R. 1054). See, also, *John Morrell & Co.* v. *Unemployment Compensation Commission,* 69 S. D. 618 (13 N. W. [2d] 498), a case very similar to the present one in its facts and in which the precise issue now under discussion was presented, wherein the South Dakota supreme court said:

"Appellants argue that the legislature in adopting the amendment must have intended to make some change in the existing law. A change in a statute may be made to express more clearly the original intention of the legislature. We think because of the apparent purpose and intention of the legislature determined from a consideration of the entire act and the declaration of public policy that the effect of the section before amendment was to require a showing of good cause attributable to the employment and that the amendment was enacted to express more clearly such intention."

The unemployment compensation act, a very important and necessary piece of social legislation, constitutes a valid exercise of the police power of the

State in the protection of the health, morals and welfare of its citizens, and it should be given broad and liberal interpretation so that full effect may be given to its provisions. But it should not be given an interpretation which will extend its application to a case which the legislature did not intend it should apply. Regulation No. 215 of the commission, set forth in full in my Brother's opinion, states what the commission "prescribes." There is no question but that the unemployment compensation commission may make proper rules and regulations to carry out the provisions of the act. However, it cannot make regulations which entirely change the act by subtracting from or adding to the provisions of the act so as to materially change it.

The fact that situations are constantly arising which were not in the contemplation of the legislature when it enacted the unemployment compensation act is attested by the frequency with which it has been amended during the short time it has been in operation. This field of law is still in an unsettled stage of development, and only by considering all of the evidence of legislative intent which is before us may we arrive at a correct interpretation of its meaning.

What is the legislative history behind the particular provision under consideration herein? Prior to the addition of subdivision (g) to section 29 by Act No. 246, Pub. Acts 1943, there was no provision in the act regarding the disqualification of pregnant women for benefits. It was the administrative practice and policy of the unemployment compensation commission to allow benefits to women who were unemployed because of pregnancy, both before and after their child was born, provided the claimant could establish that she was "available" to accept employment under section 28 of the act. Upon the enact-

ment of section 29 (g) in 1943, the commission adopted Regulation No. 215 (4), which reads as follows:

"This disqualification (for benefits because of pregnancy) shall begin on the first day of unemployment due to pregnancy and shall end when the individual is no longer pregnant and can establish that she meets all eligibility requirements."

Under this regulation, the commission allows benefits to a claimant after her child has been born, when she establishes that she can meet the eligibility requirements of section 28, *i. e.*, can establish that she is "available" for work. It is the commission's contention that the only effect of section 29 (g) was to create a conclusive presumption that a pregnant woman is "unavailable" for work, and that the presumption ceases to operate once the condition of pregnancy is terminated. There would be merit to their argument had the provision been incorporated into section 28 instead of into section 29, as section 29 speaks only of "disqualification for benefits" and not of "availability for work."

The commission's appeal board allowed benefits to the claimant herein under this regulation. An appeal was taken to the circuit court, resulting in a reversal of the appeal board's ruling. Upon petition, a rehearing was granted by the circuit court, and in a well-reasoned opinion the trial judge reiterated his former views. While the appeal to this Court was pending, the legislature amended section 29 (g) in the respects heretofore pointed out, which amendment in effect confirms the interpretation which the court below placed upon it. The instant case undoubtedly was taken into consideration by the legislature when it was considering this amendment and clarified it.

Are we to say that by so amending the act, the legislature, impressed by the wisdom and logic of the circuit judge in his opinion, was persuaded to adopt his views and change the law to conform to them? Is it not more logical to say that the purpose of the legislature was to clarify the law so that it more truly expressed its original intent?

The purpose of the unemployment compensation act, as I understand it, is to furnish protection against the economic hazard of involuntary unemployment. It is my opinion that we would not be furthering this purpose by reversing the judgment in this case.

Where a woman quits work because of pregnancy, it is difficult to determine when, if ever, she will want to return to work. It becomes her first desire to remain at home and care for her child, and in only a few cases, where for economic reasons she must return to work, will she delegate her maternal duties to someone else. In the meantime, the employer must obtain some other person to take her place in industry. Should the mother later, at a time determinable only by herself, desire to return to work, the person hired in her place would become unemployed and entitled to receive compensation benefits. Whether the mother returns to work or not, if the law is to be interpreted as my Brother interprets it, the employer must pay unemployment compensation benefits to someone. I do not believe that the legislature intended to penalize an employer in this manner.

The judgment of the trial court should be affirmed, but without costs, a public question being involved.

BUSHNELL, C. J., and CARR, J., concurred with BUTZEL, J.