## LILLIAN CURRY *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT

SUPERIOR COURT  FAIRFIELD COUNTY  FILE No. 102995

Memorandum filed November 15, 1957.

*Greenstein & Simons,* of Bridgeport, for the plaintiff.

*John J. Bracken,* attorney general, and *Harry Silverstone,* assistant attorney general, of Hartford, for the defendant.

TROLAND, J. The claimant, Lillian Curry, a married woman who was employed at Casco Products Company, Bridgeport, left her employment December 28, 1956, because she was pregnant. Mrs. Curry was expecting her child on May 9, 1957. Her doctor had advised her to leave work at the end of November, 1956, because claimant's work involved climbing two flights of stairs two or three times a day, and the doctor felt that such stair climbing was ill-advised during pregnancy. Nevertheless, Mrs. Curry continued to work until December 28, 1956, as above stated, when, there being no other work for her at the plant which did not involve the climbing activity prohibited by her doctor, she quit. After an interlude of

two weeks, claimant began to make efforts to obtain other work. She visited three or four places a week, and wrote letters to other places in answer to newspaper advertisements. The finding is corrected by adding the following admitted and undisputed facts: (a) During said period claimant's physical condition was such that it was very obvious that she was pregnant. (b) During said period when she went in person to places, they did not talk to her when they saw her condition and were unwilling to consider her application.

Plaintiff continued to be unemployed and filed claims for unemployment compensation benefits for the weeks ending January 19 and 26, February 2 and 9, which dates were in the sixth month of pregnancy, and for the weeks ending February 16 and 23, which were in the seventh month of pregnancy. During said period she wrote letters in answer to newspaper advertisements to several places a week, in which letters she stated that she was pregnant and that she expected to be delivered on May 9, 1957, and that she was nevertheless in good physical condition and able to work. She received no replies.

The administrator disapproved her claims for benefits because claimant's unemployment was due to pregnancy. On appeal to the unemployment commissioner for the fourth congressional district, after hearing, the commissioner decided that, during the period for which Mrs. Curry filed claims, her unemployment was not due to pregnancy and that she was eligible for benefits, and he reversed the administrator's decision. The administrator has appealed.

It should be noted that the commissioner has found: (a) The separation of the claimant from her work on December 28, 1956, was due to her pregnancy; (b) but for her pregnancy the claimant would have continued in her employment on her reg-

ular job during the period in question with respect to which she has filed her claims for benefits; (c) during the period with respect to which she has filed her claims or benefits, the claimant was physically able to work and available for work and making reasonable efforts to obtain work; (d) there was, during the period in question, a labor market for a person of her skills; (e) claimant's doctor advised her to keep working during the pregnancy, as this would help the time to pass, as long as such work did not involve the stair climbing activities already mentioned.

The commissioner has held that claimant's condition was such that during the weeks for which she filed claims her unemployment was not due primarily or only to her pregnancy; that her condition was such that she could not climb stairs, but she was still able to work; that if claimant were only capable of doing the kind of work that required climbing stairs, then her unemployment would be directly attributable to her pregnancy and mainly caused by that pregnancy; and that "after two weeks or more elapsed subsequent to her separation from Casco" (due to pregnancy), "and the immediate causal effects of that separation had been dissipated" (whatever that means), "her continued unemployment after January 13, 1957 was not due to pregnancy, and . . . she was entitled to benefits." This conclusion is not justified under the finding as corrected, and under the law.

The first legislative recognition that pregnancy raises a unique problem in job placement came in 1939 when a new subdivision (5) was added to the disqualification section of the earlier statute, extending the bar to benefits from one month before and one month after childbirth to two months before and two months after childbirth. Section 1339e (b) (5) of the 1939 Cumulative Supplement provided: "(b) Disqualifications. An individual shall be ineligible

for benefits . . . (5) if it shall be found by the administrator that total or partial unemployment is due to pregnancy within two months of childbirth, and no woman shall be eligible to receive benefits until two months after the date of childbirth, in either of which cases the administrator may require the production of doctor's certificates to establish such dates."

The restrictions thus set up apparently proved to be inadequate to meet the problem posed by pregnancy. Accordingly, at the very next session of the legislature, in 1941, the disqualification was amended and thereafter the bar to benefits was no longer limited to the period of two months before childbirth, but could now commence at any time prior thereto when due to pregnancy. The disqualification period of two months after childbirth was not extended at this time. Section 718f (b) (5) of the 1941 Supplement provided: "(b) Disqualifications. An individual shall be ineligible for benefits . . . (5) if it shall be found by the administrator that total or partial unemployment is due to pregnancy, provided, in any event, no woman shall be eligible to receive benefits within two months before childbirth and within two months after date of childbirth, in either of which cases the administrator may require the production of doctors' certificates to establish such dates."

This provision was again amended in 1953 and 1955. Cum. Sup. 1953, § 2315c; Cum. Sup. 1955, § 3075d. Such later amendments, however, affected the period of eligibility after childbirth only, extending the bar beyond the two-month period after childbirth to such time when she has again entered the labor market. The present provision, § 7508 (5) as amended by § 3075d, reads as follows: "Disqualifications. An individual shall be ineligible for benefits . . . . (5) If it shall be found by the administrator

that total or partial unemployment is due to pregnancy, provided, in any event, no woman shall be eligible to receive benefits within two months before childbirth and, if such child is alive, such ineligibility shall continue for two months after childbirth and until she has applied, without restrictions, for reemployment in the same job or a comparable job which may be provided by her latest employer. If any such woman refuses to accept such reemployment, she shall continue to be ineligible until she has been paid wages in an amount at least equal to one hundred dollars. The administrator may require the production of doctors' certificates to establish the expected date of childbirth."

The claim of the administrator with respect to disqualification in the period before childbirth is that the disqualification begins on the first day of unemployment due to pregnancy and continues thereafter for the duration of the pregnancy. This position is believed to be in accordance with the statute in its present form.

The Unemployment Compensation Act provides insurance to such persons as are genuinely attached to the industrial labor market against loss of income due to lack of available employment. "The mischief which the act was designed to remedy was unemployment. . . . The provisions of the act disclose that pursuant to the plan effective under it, a fund is created by employers' involuntary contributions, out of which employees who lose their jobs may, after a waiting period, be paid benefits limited in amount and duration, while looking for work but unable to find it." *Waterbury Savings Bank* v. *Danaher*, 128 Conn. 78, 81, 82. It does not provide against loss of income due to illness or physical inability to work.

A pregnant woman, although not ill in the ordinary sense of the word and not physically unable to

work, is in a distinct category of workers. Her condition generally requires that she be treated with greater care than the ordinary employee. Her dependability as to attendance on the job generally may be doubtful. Her ability to work is always temporary for the reason that it will terminate on a predetermined date, unlike the ordinary employee.

The reluctance of an employer to hire a person in such physical condition is not based on a prejudice against such person, but rather on experience. It is doubtful whether a person in such physical condition is genuinely attached to the industrial labor market. It is doubtful also in the light of her tenuous attachment to the industrial labor market whether her loss of income when unemployed is due to the lack of available employment in the market place. The solution of her problem lies in the field of maternity benefits, which the unemployment compensation act does not provide. No doubt such practical considerations prompted the legislature in its 1941 enactment to declare that a person whose unemployment is due to pregnancy is not a beneficiary under the Unemployment Compensation Act. Sup. 1941, § 718f (b) (5).

The problem presented is one of "statutory construction involving consideration of the terms of the Act as a whole and the circumstances and conditions existing at the time and which may be deemed to have affected its intent and motivated its adoption." *Hartford Production Credit Assn.* v. *Clark,* 118 Conn. 341, 343. The court is "called upon to 'look beyond the literal meaning of the words to the history of the law, its language considered in all its parts, the mischief it was designed to remedy and the policy underlying it.' *Chambers* v. *Lowe,* 117 Conn. 624, 626, 169 Atl. 912." *Waterbury Savings Bank* v. *Danaher,* supra, 81. The "mischief" which this 1941 amendment was designed to remedy was the pay-

ment of unemployment benefits to persons whose unemployment is due to pregnancy. Such "mischief" is not limited to the first week or couple of weeks of such unemployment. It continues, if it exists, for the entire period of pregnancy. It is accordingly a fair inference that the legislature intended the disqualification when it once attached to continue thereafter for the duration of the pregnancy.

The commissioner found that the unemployment of the plaintiff Curry during the week in which she left her employment was due to pregnancy. Accordingly, she would have been disqualified for benefits had she filed a claim for benefits for that week. What has happened thereafter to terminate the disqualification so that she is no longer disqualified two weeks later when she does apply for benefits? She is still pregnant. The commissioner says that she is not disqualified because she is able to work. But she is now no more able to work than she was when she left her job; she was just as able to work when she left her job, yet she was disqualified because of the statute. If the eligibility of a pregnant woman were now to be tested only by ability to work and availability for work—as it was before the amendment was passed—it was not necessary to pass the amendment in 1941. The court cannot impute to the legislature an intention to have changed the law to disqualify for one or possibly two weeks only, after leaving, in a pregnancy case—a conclusion for which no support is offered.

There is a scarcity of Connecticut authority on the point in question. The Superior Court has passed on several cases since the enactment of the 1941 amendment, and in so far as applicable to this case, these cases support the administrator's interpretation of the statute. *Mitchell* v. *Administrator,* Superior Court, Hartford County, No. 79031 (1947); *McGuiness* v. *Administrator,* Superior Court, New London

County, No. 19314 (1950); *Gagain* v. *Administrator,* Superior Court, Fairfield County, No. 83339 (1951).

Support for the administrator's claim is found in a Michigan case, where in a carefully considered opinion, involving a statute similar to that in Connecticut, the court approved the following rule with reference to the disqualification caused by pregnancy: " 'This disqualification shall begin on the first day of unemployment due to pregnancy and shall end when the individual is no longer pregnant and can establish that she meets all eligibility requirements.' " *Packard Motor Car Co.* v. *Unemployment Compensation Commission,* 320 Mich. 358, 361.

In the present case the unemployment commissioner erred in holding that Lillian Curry was entitled to benefits, the appeal is sustained, and the case is remanded to the commissioner with instructions to make an award denying unemployment compensation benefits to the plaintiff.