HANNAH PIERSON *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT

SUPERIOR COURT     NEW LONDON COUNTY     FILE No. 25264

Memorandum filed October 8, 1958

*Hannah Pierson,* pro se.

*John J. Bracken,* attorney general, and *Harry Silverstone,* assistant attorney general, for the Administrator, Unemployment Compensation Act.

SHANNON, J. This is an appeal from a decision of the unemployment commissioner for the second congressional district affirming an examiner's deci-

sion disapproving a new claim for unemployment benefits on the ground that the claimant had received benefits in a prior benefit year and had not been paid wages of $150 since the beginning of that prior benefit year.

The claimant is a married woman, aged sixty-seven, licensed to practice medicine in the state of Connecticut. From December 1, 1946, to February 23, 1957, the claimant was pathologist at Norwich state hospital. She reached the mandatory retirement age for women and was retired on the latter date. The claimant registered for work and filed a new claim for unemployment benefits as of March 3, 1957. Her claims were approved and she continued to file through September 7, 1957, when she exhausted her benefits.

The claimant's husband, Henry Pierson, M.D., became licensed to practice medicine in Connecticut in 1953. He did not practice from that time until August, 1957, when he commenced to practice in Norwich in a combined office and residence purchased by him and his wife. In October and November, 1957, Dr. Henry Pierson was ill with a virus infection which at times confined him to bed so that he was unable to carry on his practice. The claimant then gave her professional services in order to help maintain her husband's practice, answering the telephone, accepting patients she felt capable of handling, doing laboratory work such as urinalysis and blood counts, and assisting her husband by sterilizing instruments when he was able to see a patient. She treated, she estimates, perhaps six patients, and did an estimated twenty to thirty urinalyses and an estimated fifteen blood counts. For her services during this period, Dr. Henry Pierson gave the claimant $150. No social security tax was paid and no withholding tax withheld from this sum. This sum was paid by him and accepted by the claim-

ant in order to meet the $150 earnings requirement set forth in § 7508 (8) of the General Statutes. Cum. Sup. 1955, § 3076d.

The relationship between the claimant and Dr. Henry Pierson during the period in October and November, 1957, was not a bona fide employer-employee relationship, but one in which one marriage partner was partially incapacitated to practice his profession and where the other was equipped by training and professional qualifications to carry it on to their mutual benefit. The commissioner concluded that the sum paid by Dr. Henry Pierson to this claimant was not a wage. It is patently a device used to provide the claimant with the sum necessary to enable her to collect benefits in a subsequent benefit year. She is a wife and he is her husband. The court has no doubt that she would have done the work she did for him in October and November of last year with no wages at all, as part of her duty and responsibility toward her lifetime partner, who was ill at the time. The situation disclosed here does not have the elements which enable us to consider the $150 payment as wages within the meaning of the law.

General Statutes § 7508, as amended by § 3076d of the 1955 Cumulative Supplement, reads in part as follows: "An individual shall be ineligible for benefits . . . (8) . . . if it shall be found by the administrator that, having received benefits in a prior benefit year, he has not been paid wages since the commencement of said prior benefit year in an amount equal to at least one hundred and fifty dollars." The statutory provision under consideration was enacted by amendment to the unemployment compensation law at the 1953 session of the General Assembly, effective with the benefit year commencing after July 4, 1953, and first reported in § 2316c of the 1953 Cumulative Supplement. Prior thereto, it was possible

for an individual to obtain benefits during two successive benefit years without any intervening employment.

The question for decision is one of statutory construction. In such case, the court is "called upon to 'look beyond the literal meaning of the words to the history of the law, its language considered in all its parts, the mischief it was designed to remedy and the policy underlying it.' *Chambers* v. *Lowe,* 117 Conn. 624, 626, 169 Atl. 912." *Waterbury Savings Bank* v. *Danaher,* 128 Conn. 78, 81. The "mischief" this amendment was designed to remedy was the payment of benefits in a second benefit year to persons who, after starting to collect unemployment compensation benefits, had not again re-entered the labor market, as evidenced by intervening employment. The minimum earning requirement of $150 was fixed as a measure of his attachment to the labor market. The law says, in effect: A person who has not re-entered the labor market since he started to file claims for benefits and has not earned and been paid wages thereafter to the extent of at least $150 has not demonstrated such attachment to the labor market as to entitle him to the benefits of the Unemployment Compensation Act, which provides benefits for persons in the labor market while between jobs.

This statute has been considered by this court on three occasions: In the case of *Rogers* v. *Administrator,* Superior Court, New Haven County, No. 81168, March 22, 1955, the court *(Devlin, J.)* held that "wages" within the meaning of the statute is remuneration for services performed in the employment relationship, and a person was ineligible in the second benefit year if his only income since the commencement of his prior benefit year was from self employment. In the case of *Laukaitis* v. *Administrator,* 19 Conn. Sup. 367, 368, the court *(Murphy,*

*J.)* held that vacation pay, being remuneration for loss of wages, was not "wages" within the meaning of the statute and that a person was ineligible in the second benefit year if his only income since the commencement of his prior benefit year was a vacation payment. The decision in the *Rogers* case, supra, is based in part on the definition of "employment," which is defined (General Statutes § 7495 [a] [1]) as "any service, including service in interstate commerce, performed under any express or implied contract of hire creating the relationship of employer and employee." In the case of *Montanaro* v. *Administrator,* Superior Court, Fairfield County, No. 106002, July 7, 1958, the court *(Healey, J.)* held that jury fees are not "wages" within the meaning of the statute in question. He said: "Jury service is not the result of a contract of hire."

The unemployment commissioner concluded that there was no bona fide employment relationship between the husband and the wife and that the money paid to the plaintiff was not a "wage" within the meaning of the statute in question. The function of the court on this appeal is set forth in *Lanyon* v. *Administrator,* 139 Conn. 20, 28, and the question is whether the unemployment commissioner acted unreasonably, arbitrarily or illegally.

The term "wages" is defined as "remuneration for employment." Cum. Sup. 1955, § 3059d. The term "employment" is defined as "service . . . under any express or implied contract of hire creating the relationship of employer and employee." General Statutes § 7495 (a) (1). The contract between the parties, such as it was, is set forth in the transcript. This is not a contract of hire and there is not created thereby the relationship of employer and employee. Had he not paid her, could she have sued? Did she have a legal right to collect? The money he gave her is described by her as follows: "He put it aside from

the household money and gave me that money. He said, 'That is money you earned.'" The commissioner could reasonably have concluded that she would have received that money in any event—it was money for the household and probably was used for the household.

Her husband testified that he was to pay her $150, and in reply to the question whether that payment was to be made "so she would get her unemployment benefits," he said that "she would be covered anyway, else it would not make any sense." Does this not mean that the "wages" were paid only to render her eligible for benefits? And if so, does that not mean that the employment relationship, if any, was not a bona fide relationship but created rather only to render her eligible for benefits, and that she would have rendered the same service under the same conditions without pay? Can it be said that the unemployment commissioner acted unreasonably in reaching the conclusion that the "contract" was a mere ritual and not a fact?

The plaintiff has not filed any reasons of appeal in this case. But she did file reasons of appeal before the commissioner, as follows: "That I actually earned at least $150 and that I was mentally and physically fit to earn it. In the U. S. income tax return, you file your income, not only your 'wages.' During my husband's sickness the patients paid a fee which I earned. There is nowhere given any information that the money to be earned has to be called wages, which have to be given by a contract." It would appear that she did not at that time claim that there was a contract. It would appear that the money she earned was in self employment.

The federal court has considered the same problem in the following cases, all of which are reported in the Commerce Clearing House Unemployment

Insurance Reporter: *Thurston* v. *Hobby,* ¶ 8015 (D. Mo. 1955); *Murray* v. *Folsom,* ¶ 8212 (D. D.C. 1957); *Stengel* v. *Hobby,* ¶ 8261 (D. N.Y. 1955); *Gilbert* v. *Folsom,* ¶ 8263 (D. Ark. 1956); *Wilson* v. *Folsom,* ¶ 8264 (D. N.Y. 1956); *Turpin* v. *Folsom,* ¶ 8277 (D. Va. 1957); *Bentley* v. *Folsom,* ¶ 8338 (D. Mo. 1957); *Folsom* v. *O'Neal,* ¶ 8538 (10th Cir. 1957); *Gustafson* v. *Folsom,* ¶ 8388 (D. Ore. 1958).

The conclusion of the unemployment commissioner that the plaintiff did not re-enter the labor market within the meaning of the statute is not unreasonable in the light of the evidence, nor arbitrary nor illegal. The appeal should be and it is dismissed and the decision of the unemployment commissioner affirmed.